[No. B215912. Second Dist., Div. Five. Aug. 6, 2010.]

COUNTRYWIDE FINANCIAL CORPORATION et al., Plaintiffs and Respondents, v.
THOMAS BUNDY et al., Defendants and Appellants.

238

COUNSEL

Boies, Schiller & Flexner, Caryl L. Boies, Sigrid S. McCawley and Lauren E. Fleischer for Defendants and Appellants.

Seyfarth Shaw, Andrew M. Paley, Gregg A. Fisch and Jennifer Sloane Abramowitz for Plaintiffs and Respondents.

OPINION

TURNER, P. J.—

## I. INTRODUCTION

Defendants, Thomas Bundy, Misty Sanchez, Kevin Prevost and David Godina, appeal from an order vacating partial arbitration awards against plaintiffs, Countrywide Financial Corporation and Full Spectrum Lending, Inc. Judge Elizabeth A. White vacated the partial arbitration awards on the ground the arbitrator committed a number of legal errors. Because of the unambiguous choice of law language in the agreements to arbitrate, we conclude we must apply the vacatur provisions applicable before a United States District Court in a case subject to the Federal Arbitration Act. (9 U.S.C. § 1 et seq.) When we apply the vacatur provisions of the Federal Arbitration Act, we conclude no grounds permitted the partial awards to be vacated. Although it is uncertain whether the manifest disregard of the law vacatur rule remains extant, we apply it and the federal excess of powers standard of judicial review to the partial awards. Thus, we reverse the order vacating the partial arbitration awards. We do not address the parties' other contentions including their statute of limitations analysis.

## II. PROCEDURAL HISTORY

### A. Overview of the Two Arbitration Demands

On August 16, 2006, defendants filed two separate arbitration demands on behalf of themselves and others similarly situated before the American Arbitration Association—case Nos. 111600185806 (the Bundy-Sanchez-Prevost arbitration) and 111600185706 (the Godina arbitration). Both arbitration demands were filed against Countrywide Financial Corporation and its wholly owned subsidiary, Full Spectrum Lending, Inc., which was formed in 1996. Full Spectrum Lending, Inc., primarily handled the subprime loans of Countrywide Financial Corporation. But Full Spectrum Lending, Inc., also handled "prime quality" loans. The Bundy-Sanchez-Prevost arbitration was brought on behalf of "Account Executive(s)" employed at all Full Spectrum Lending branches whose principal function was the sale of loan products. The Godina arbitration was bought on behalf of specified "Call Center" employees. The two arbitration cases were ultimately consolidated.

The Bundy-Sanchez-Prevost arbitration demand sought classwide arbitration of claims for unpaid wages including incentive compensation, waiting penalties, costs and attorney fees pursuant to Labor Code section 200 et seq., Business and Professions Code section 17200 et seq., and common law principles. Additionally, the Bundy-Sanchez-Prevost arbitration demand alleged plaintiffs failed to pay incentive compensation earned on loans originated and closed in California on a semimonthly basis as required by Labor Code section 204 and upon termination of employment pursuant to Labor Code sections 201 and 202. The precise nature of the alleged forfeiture of wages will be discussed later.

According to the Bundy-Sanchez-Prevost arbitration demand: plaintiffs employed Mr. Bundy between April and November 2005 as an account executive at Full Spectrum Lending, Inc.; classified as a "non exempt employee" under federal and state wage and hour laws, Mr. Bundy was to be paid $18,000 plus incentive compensation annually; and Mr. Bundy was to receive monthly and quarterly incentive bonuses based on the number of loans funded during the relevant pay period. According to the arbitration demand, Mr. Bundy was not paid as required by Labor Code section 204. In addition, Mr. Bundy did not receive his monthly incentive compensation for November 1 through 22, 2005. Further, he did not receive quarterly incentive compensation and quarterly compensation for loans funded between July 1 and November 22, 2005. When Mr. Bundy left plaintiffs' employ, he was owed at least $6,000 in incentive compensation.

As to Ms. Sanchez, the arbitration demand alleged she was employed by plaintiffs as an account executive between May 2004 and May 4, 2006. Prior

to January 1, 2005, Ms. Sanchez was unlawfully classified as an exempt employee. Under the terms of her employment agreement she was to be paid $2,500 for her first two months of employment, $2,000 for her third month, and $800 per month thereafter. In addition, she was to receive monthly and quarterly incentive compensation. Throughout her employment, Ms. Sanchez did not receive compensation to which she was entitled in violation of Labor Code section 204. Further, when she left plaintiffs' employ, Ms. Sanchez did not receive monthly and quarterly incentive compensation for April 1 through May 4, 2006, and January 1 through May 4, 2006, respectively.

Mr. Prevost was a Full Spectrum Lending, Inc., account executive between August 2005 and May 17, 2006. Classified as an exempt employee, he was to be paid $18,000 annually plus monthly and quarterly incentive bonuses. Throughout his term of employment, Mr. Prevost was not paid as required by Labor Code section 204. And upon the termination of his employment, Mr. Prevost was not paid his monthly and quarterly incentive compensation between April 1, 2005, through May 17, 2006, and January 1 through May 17, 2006, respectively.

The arbitration claims were brought in the individual capacities of Mr. Bundy, Ms. Sanchez and Mr. Prevost and as members of a class of plaintiffs' former and present employees. The class members were not paid monthly and quarterly incentive compensation during the four years prior to the filing of the arbitration demand. All account executives were provided a copy of plaintiffs' "Incentive Plan." Under the terms of the "Incentive Plan," account executives were required to forfeit any monthly and quarterly bonuses earned in the last partial months and quarters respectively of their employment. The Bundy-Sanchez-Prevost arbitration demand alleges account executives have no power to negotiate different provisions.

The alleged class is, "All persons other than officers, directors or controlling persons of [plaintiffs] who were employed by [plaintiffs], were paid according to the Plan and therefore were not properly paid within the time frame set forth in California Labor Code § 204." The Bundy-Sanchez-Prevost arbitration demand refers to this class as the "Claimant Class." Additionally, the Bundy-Sanchez-Prevost arbitration demand seeks to represent the following subclass, "Persons, other than officers, directors, or controlling persons of [plaintiffs] who were employed by [plaintiffs], were paid according to the Plan, and left the employment of [plaintiffs], but were not paid incentive compensation earned on loans that funded during their employment."

The Godina arbitration demand alleges many of the same matters in terms of plaintiffs' operations. Mr. Godina was an account executive at the Full Spectrum Lending, Inc., Call Center in Rosemead, California, between

December 2, 2002, and December 8, 2005. Mr. Godina was to be paid $18,000 per year plus incentive compensation. The amount of incentive compensation payable to employees was calculated on funded loans under specified circumstances. The incentive compensation was to be paid on a monthly and quarterly basis. Prior to January 1, 2005, Mr. Godina was improperly classified as an exempt employee. Since January 1, 2005, Mr. Godina was classified as a nonexempt employee under federal and state wage and hour laws.

According to his arbitration demand, plaintiffs failed to compensate Mr. Godina as required by Labor Code section 204. And upon his discharge, Mr. Godina was not paid his monthly incentive compensation for loans funded from November 1 through December 8, 2005. Moreover, Mr. Godina did not receive quarterly incentive compensation for loans that funded July 1 through December 8, 2005. When Mr. Godina left plaintiffs' employ, he was owed in excess of $6,000 in incentive compensation.

Mr. Godina also brought his arbitration demand on behalf of similarly situated Call Center employees who had not been paid their monthly or quarterly incentive compensation in compliance with Labor Code section 204. Moreover, Mr. Godina filed the arbitration demand on behalf of former employees who were not paid their monthly and quarterly incentive compensation in the "last full and partial months and quarters respectively, of employment" while employed by plaintiffs. As in the case of the Bundy-Sanchez-Prevost arbitration demand, the forfeiture clause in Mr. Godina's employment agreement required that he and other class members retain employment with plaintiffs in order to receive all incentive compensation due to employees. Apart from the different employee groups, the two potential classes in the Godina arbitration demand are the same as those alleged in the Bundy-Sanchez-Prevost arbitration demand. The claims and relief sought in the Godina arbitration demand are the same being pursued in the Bundy-Sanchez-Prevost arbitration.

In their arbitration demands, defendants seek class certification on behalf of themselves and others similarly situated regarding fellow employees' incentive compensation clauses contained in their employment agreements. The continuing tenure provision required an employee to work throughout what was designated as the "Plan Month" and the entire following month in order to receive the monthly incentive payment. Under the terms of the plan, an employee, who leaves defendants' employment either voluntarily or involuntarily before the last day of the month following the "Plan Month," will not receive any portion of the monthly incentive payment. Defendants allege: plaintiffs failed to pay earned commission wages to those employees and this constituted an unfair business practice in violation of Business and Professions Code section 17200; the continuing tenure requirement was an

unconscionable forfeiture of wages (Lab. Code, § 204) "and/or" untimely withholding of wages (Lab. Code, §§ 201, 202, 203); and, therefore, was unenforceable under California law. Defendants' arbitration demands seek the right to proceed as classwide arbitrations; recovery of compensatory damages; recovery of penalties for violations of Labor Code section 203; payment of restitution pursuant to Business and Professions Code section 17200; recovery for unjust enrichment; disgorgement; declaratory and injunctive relief; a declaration the forfeiture provision violates Labor Code sections 201 through 204 and is unenforceable pursuant to Labor Code section 206.5; an interest award; and attorney fees.

### B. Proceedings Before the Arbitrator

Before the arbitrator, the parties stipulated, "[T]here was no clause construction issue to be litigated . . . ." In May 2007, plaintiffs sought summary judgment against the defendants based on two separate settlements which had been reached in two class action lawsuits. The first action which plaintiffs asserted barred the claims brought here was a settlement in *Zamora v. Countrywide Financial Corp.* (Super. Ct. L.A. County, 2007, No. BC351127) (the *Zamora* class action). The *Zamora* class action was filed on April 20, 2006. The *Zamora* class action involved only former account executives who were terminated and claims for forfeiture of the last months of commissions, waiting time penalties, attorney fees, and costs. The second class action, which plaintiffs asserted barred the claims brought here, was a lawsuit resolved in the United States District for the Northern District of Texas, *Walker v. Countrywide Credit, Industries,* case No. 3:03 CV-00684-N (the *Walker* federal class action). The *Walker* federal class action was filed in 2002 and settled in 2005. The *Walker* federal class action involved overtime claims. By contrast, this case involves plan and forfeiture issues. There were no plan or forfeiture claims in the *Walker* federal class action.

In an interim award on November 1, 2007, the arbitrator rejected plaintiffs' contention that collateral estoppel principles barred Mr. Godina from proceeding with the present class action. Additionally, in the November 1, 2007 interim award, the arbitrator ruled the issues in the *Walker* federal class action case were not identical to those in the Bundy-Sanchez-Prevost and Godina arbitration demands. The November 1, 2007 interim arbitration award states: "The Walker settlement documents do not include a specific reference to claims for unpaid bonuses, nor does the Motion for Final Approval and Final Judgment, and of greatest importance, nor do the notices served on the Walker class members. The settlement discussions did not involve any claims for or settlement of claims for unpaid bonuses. The claims and the claimants in the Godina and Bundy, et al. class actions differ substantially from those in the Walker case, both in numbers and in the description of their claims. [¶]

The mere recital, as in the release signed on behalf of the Walker claimants, that the protection of the Civil Code section 1542 is waived, or that the release covers unknown claims, is not controlling, especially given the ample evidence to the contrary."

On November 16, 2007, the arbitrator issued an order in response to plaintiffs' request for clarification of the November 1, 2007 interim award. The November 16, 2007 clarification order states: "[N]o further formal clarification of the Interim Order is required. Nevertheless, it is emphasized that the Interim Award found that all members of class claimants of the Zamora action who received lawful notice, or participated in the fairness proceedings, or received a settlement payment in that case are barred from pursuing those same claims in the Godina and Bundy, Sanchez and Prevost cases, except for claims based on California Labor Code [section] 204. That being the case, it is observed that any claimants in the Godina and Bundy, et al., cases who are pursuing the same claims as lawfully settled in the Zamora case that were members of the Zamora class will have the burden of proving they were not given lawful notice in the Zamora case and did not participate in the fairness proceedings or receive a settlement payment in that case. [¶] It is also emphasized that the Settlement and Release in the Walker case is not a bar by res judicata or collateral estoppel to the claimants in the Godina and Bundy, et al., cases pursuing the claims against [plaintiffs] as stated in their complaints or claims filed with the American Arbitration Association."

On March 11, 2008, the arbitrator issued an interim award which granted plaintiffs' December 2007 request for summary adjudication that private litigants may not recover the penalties provided for by Labor Code section 204. The arbitrator denied plaintiffs' request to summarily adjudicate that defendants could not pursue claims predicated on Labor Code violations when proceeding under Business and Professions Code section 17200. But, the arbitrator dismissed all *penalty* claims.

On October 24, 2008, the arbitrator issued a "Partial Final Award Re: Class Certification" which granted defendants' class certification motions in their entirety in both cases. The October 24, 2008 interim award addressed the issues relating to both arbitration demands. The arbitrator noted the parties had stipulated in April 2007 that the issues raised by the two arbitration demands were arbitrable. The arbitrator explained: "[Defendants] request the certification of a class consisting of all persons, including current and former employees other than officers, directors or controlling persons of [plaintiffs], who were employed by the [plaintiffs] and who were paid according to the [plaintiffs'] Incentive Plan . . . and subject to that Plan's Forfeiture Provision and who were not properly paid within the time mandated by California Labor

Code [section] 204. [¶] [Defendants] also move for the certification of a Sub-Class of all persons, including current and former employees, other than officers, directors, or controlling persons of [plaintiffs], who were employed by [plaintiffs] and who were entitled to be paid according to the Plan, and who left the employment of the [plaintiffs], but were not paid the incentive compensation claimed by them to have been earned pursuant to the Plan on loans funded during their employment. [¶] The combined Class and Sub-Class include all persons employed in or who were to receive, as part of the Plan's bonus provisions, payments in addition to their regular salary based on 'loans sold' to customers, whether there were Account Executives, Team Managers or Branch Managers or any of the numerous variations of those titles that [plaintiffs] attached to those who were the beneficiaries of the Plan and subject to its Forfeiture Provisions between August 16, 2002 and the present, whether currently employed or who left [plaintiffs'] employ and were not paid the incentive earned pursuant to the plan."

As previously noted, on November 1, 2007, while ruling on the summary judgment motions, the arbitrator returned an interim award which restricted the classes in the two arbitrations because of the release in the *Zamora* class action. In the October 24, 2008 partial final award, the arbitrator referenced the prior November 1, 2007 ruling stating, "Although there may be some exceptions based on specific evidence of full and timely payment or participation in a prior legal action involving the same claims against the [plaintiffs] (subject to the Arbitrator's rulings on [plaintiffs'] Motions for Summary Judgment herein, finding that the settlement agreements in the Zamora and Walker cases did not bar the claims herein made), there is sufficient evidence to conclude that there are issues pertaining to the putative classes that are common to all of their members."

The arbitrator found defendants were plaintiffs' employees who were paid a salary and bonus pursuant to the Incentive Plan. The claims in this case were solely for "non-payment" or untimely payment brought pursuant to Labor Code sections 203 and 204. The bonuses were owed pursuant to the "Plan and Forfeiture Provisions" for three types of work by class members: for loans directly negotiated by the employee; for situations where the employee supervised or assisted in the successful sale of the loan; or where the payment of the bonus was premised on the employee's own sales or those of others such as branch managers and team leaders.

The arbitrator found that the employment contracts were presented on a take-it-or-leave-it basis and there was no evidence any agreements were changed in any way. The arbitrator recited the forfeiture provision, which appeared in all of the employment agreements in one way or another: "Unless otherwise provided for herein or in the Incentive Plan as a condition

precedent to eligibility for any portion of an Incentive, an Eligible Employee must be employed in active status from the Initial Eligibility Date for the particular Incentive through the last day of the month following the month for which the Incentive is calculated, except in the case of the Annual Incentive which requires the Eligible Employee to be in active status until the earlier of (i) the date on which the Annual Incentive is paid or (ii) the 75th day following the end of the Annual Incentive Period or such other twelve-month period. The Incentive payment shall be referred to herein as the 'Commission' or the 'bonus.' "

The arbitrator found, as required by the American Arbitration Association Supplementary Rules for Class Arbitrations, rule 4, that the number of class members, both current and former employees of plaintiff, "exceeds 2,000"; there were common issues of law and fact; defendants' claims were typical of those of other class members; defendants were prepared to protect the members of the two classes; and the parties were all subject to the same or similar arbitration provisions. The arbitrator rejected plaintiffs' argument that not all class members were subject to the same arbitration provision on the ground there was no substantial evidence that the members of the putative classes had different arbitration provisions. Rather, the arbitrator found, "[T]here is ample evidence that the members of the putative classes were all subject to the same or similar arbitration provision, just as they were subject to the same or similar Incentive Plan, Terms, and Forfeiture Provision." The arbitrator certified the class as to all of defendants' remaining claims. As noted, the arbitrator had earlier dismissed defendants' requests for Labor Code section 204 penalties. Defendants were designated as representatives for their respective classes. The arbitrator retained the option of decertification if the issues proved unmanageable. As required by the American Arbitration Association Supplementary Rules for Class Arbitrations, rule 5, the award was stayed for 30 days to allow any party to challenge it. We will later detail the evidence before the arbitrator as it relates to the specific claims on appeal.

### C. The Petitions to Vacate the Interim Arbitration Awards

On November 24, 2008, plaintiffs filed their petition to vacate or modify the interim arbitration awards. The grounds for the petition were that not all the potential class members signed the same arbitration agreement; many class members had already released their claims; the arbitrator improperly found that Mr. Godina was an adequate class representative; and Labor Code section 204 does not provide a private right of action. On December 31, 2008, plaintiffs filed an amended petition to vacate or modify the interim arbitration awards on the grounds the arbitrator erroneously included parties in the class who had either not consented to arbitration at all or not before the American Arbitration Association; included individuals who released their claims in the

*Walker* federal and *Zamora* class actions; concluded Mr. Godina would be an adequate class representative because it had been determined that he had conclusively released all his claims in the *Zamora* class action (which raised the identical issues in this case); and determined class members have a private right of action to directly seek damages for alleged violations of Labor Code section 204.

### D. Related Case Controversy

As noted, the original petition to vacate the arbitration awards was filed on November 24, 2008. Two days after the initial petition was filed, on November 26, 2008, plaintiffs filed a related case notice. Plaintiffs asserted the present litigation, which seeks to vacate or modify the interim awards, was related to the *Zamora* class action. Defendants opposed designation of the present case as related to the *Zamora* class action, stating: "The Present case involves a Petition to Vacate an Arbitrator's Interim Award and is assigned to the Honorable Elizabeth [A.] White. The case indentified in the subject Notice (Ronald Zamora v. Countrywide Financial Corp, BC251127), which was previously pending before the Honorable James R. Dunn, is a closed case that has been closed since February 15, 2007. Nothing is pending before Judge Dunn, and the present action will not require duplication of judicial resources if heard by Judge White." Defendants took the position the case should be transferred to the Honorable Victoria Chaney. On December 4, 2008, Judge Dunn found the two cases were not related.

### E. Order Granting the Amended Petition to Vacate or Modify the Arbitration Awards

In a written order filed March 17, 2009, Judge White granted the amended petition to vacate the partial arbitration awards. Judge White's order found that the arbitrator had committed all the legal errors asserted by plaintiffs in the amended petition to vacate. This timely appeal followed.

### III. DISCUSSION

### A. Standard of Judicial Review—The Choice of Law Decision

■ Defendants argue Judge White was required to utilize the vacatur provisions of the Federal Arbitration Act in passing on the amended petition to vacate the partial awards. We agree. When determining whether to vacate an arbitrator's award, California state courts do not apply the Federal Arbitration Act vacatur provisions. (*Cable Connection, Inc. v. DIRECTV, Inc.*

(2008) 44 Cal.4th 1334, 1350–1352 [82 Cal.Rptr.3d 229, 190 P.3d 586]; *Siegel v. Prudential Ins. Co.* (1998) 67 Cal.App.4th 1270, 1272, 1276–1289 [79 Cal.Rptr.2d 726].) As will be noted though, the parties have unambiguously agreed to enforcement of the awards under the Federal Arbitration Act and we enforce their choice of law determination.

The introduction to the relevant arbitration agreement states in part, "[T]he Company and the Employee have entered into this Mutual Agreement to Arbitrate Claims . . . 3 in order to establish and gain the benefits of a speedy, impartial and cost-effective dispute resolution process." Paragraph 1 in the arbitration agreement signed by Ms. Sanchez and Mr. Bundy states: "[T]he Company and the Employee hereby consent to the resolution by arbitration of all claims or controversies arising out of, relating to or associated with the Employee's employment with the Company . . . . The purpose and effect of this Agreement is to substitute arbitration, instead of a federal or state court, as the exclusive forum for the resolution of the Covered Claims. The parties' responsibilities and legal remedies available under any substantive law applicable to a Covered Claim shall be enforced in any arbitration conducted pursuant to this Agreement." Other versions of the arbitration agreement contain similar language with no material differences. Paragraph 2 of all of the arbitration agreements, including the version executed by Ms. Sanchez and Mr. Bundy states: "Governing Law. The parties agree that the Company is engaged in transactions involving interstate commerce. Except as provided in this Agreement, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings pursuant to this Agreement. All arbitrations covered by this Agreement shall be adjudicated in accordance with the state or federal law which would be applied by a United States District Court sitting at the place of the hearing, including applicable statute of limitations." Paragraph 10 of the arbitration agreement signed by Mr. Bundy and Ms. Sanchez states, "The arbitrator's decision shall be final and binding upon the parties except that both parties shall have the right to appeal to an *appropriate court with jurisdiction errors of law* in the decision rendered by the arbitrator." (Italics added.) Plaintiffs rely on this language in paragraph 10 and argue we may review the arbitrator's partial awards for errors of law.

■ Under the California Arbitration Act, the parties can contractually agree to expand the scope of judicial review of the merits of an award. (*Cable Connection, Inc. v. DIRECTV, Inc., supra,* 44 Cal.4th at pp. 1340, 1364; *Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 25 [10 Cal.Rptr.2d 183, 832 P.2d 899].) In *Cable Connection, Inc. v. DIRECTV, Inc.,* at page 1340, our Supreme Court held that the parties may alter the normal rules which proscribe judicial review for arbitrator error: "We adhere to our holding in *Moncharsh,* recognizing that contractual limitations may alter the usual scope of review. The California rule is that the parties may obtain judicial review of the merits by express agreement. There is a statutory as

well as a contractual basis for this rule; one of the grounds for review of an arbitration award is that '[t]he arbitrators exceeded their powers.' (§§ 1286.2, subd. (a)(4), 1286.6, subd. (b).) Here, the parties agreed that '[t]he arbitrators shall not have the power to commit errors of law or legal reasoning, and the award may be vacated or corrected on appeal to a court of competent jurisdiction for any such error.' This contract provision is enforceable under state law, and we reverse the contrary ruling of the Court of Appeal." In our case, the parties explicitly agreed to have an arbitration award "adjudicated in accordance with the state or federal law which would be applied by a United States District Court" which does not include the right to review of the merits of the award in the manner asserted by plaintiffs. As they are entitled, the parties "expressly and unambiguously" agreed to adjudication of the award in a fashion different from that which would occur in superior court. (*Cable Connection, Inc. v. DIRECTV, Inc., supra,* 44 Cal.4th at p. 1340; see *Gueyffier v. Ann Summers, Ltd.* (2008) 43 Cal.4th 1179, 1185 [77 Cal.Rptr.3d 613, 184 P.3d 739]; *Christensen v. Smith* (2009) 171 Cal.App.4th 931, 937 [90 Cal.Rptr.3d 57].) Here, the parties unambiguously agreed that any award would be reviewed as it would be by a federal district court judge applying the Federal Arbitration Act. Accordingly, we review the partial awards in this case utilizing the vacatur provisions of the Federal Arbitration Act which would be applied by a United States District Court judge.

One last point on the choice of law issue warrants comment. We are reviewing arbitration agreements executed prior to the holding in *Hall Street Associates, L. L. C. v. Mattel, Inc.* (2008) 552 U.S. 576, 579–580 [170 L.Ed.2d 254, 128 S.Ct. 1396], that no enhanced merits based judicial review may be conducted in a United States District Court under the Federal Arbitration Act pursuant to the litigants' stipulation. In executing the arbitration agreements, the parties assumed merits based review was an option in cases subject to review in federal court. When the parties executed the arbitration agreements before us, there was authority, now abrogated by the *Hall Street Associates, L.L.C.* decision, which allowed for expanded merits based federal court review of an award pursuant to the litigants' agreement. (*Roadway Package System, Inc. v. Kayser* (3d Cir. 2001) 257 F.3d 287, 293 & fn. 3; *Gateway Technologies, Inc. v. MCI Telecommunications Corp.* (5th Cir. 1995) 64 F.3d 993, 996–997.) There was also authority for the proposition no enhanced merits based judicial review was available in a case subject to the Federal Arbitration Act. (*Kyocera Corp. v. Prudential-Bache Trade Services, Inc.* (9th Cir. 2003) 341 F.3d 987, 1000; *Worth v. Tyer* (7th Cir. 2001) 276 F.3d 249, 262; *K & T Enterprises, Inc. v. Zurich Ins. Co.* (6th Cir. 1996) 97 F.3d 171, 175.) It was not until *Hall Street Associates, L.L.C.* that the issue of whether litigants could expand the limited scope of the federal court vacatur power was resolved once and for all. When the arbitration agreements were

executed, the presence of the legally uncertain language allowing for enhanced merits based review of an award did not then create any question as to whether there was a clear unambiguous choice of law decision to require application of the Federal Arbitration Act vacatur provisions.

What we do not address is whether an unambiguous choice of law decision could be made by the contracting parties if an arbitration agreement, like the ones before us, is signed after the *Hall Street Associates, L.L.C.* decision was filed, March 25, 2008. Under those circumstances, the issue would be more difficult, as then the contracting parties would have elected a vacatur provision now expressly unavailable under the Federal Arbitration Act. And as noted, vacatur review for errors of law or substantial evidence is available under the California Arbitration Act with the parties' express and unambiguous consent. (*Pearson Dental Supplies, Inc. v. Superior Court* (2010) 48 Cal.4th 665, 676, fn. 2 [108 Cal.Rptr.3d 171, 229 P.3d 83]; *Cable Connection, Inc. v. DIRECTV, Inc., supra,* 44 Cal.4th at pp. 1350–1351, fn. 12 & 1352–1354.) The issue becomes more complex when the arbitration agreement: requires review under the Federal Arbitration Act, as here; permits review for errors of law, as here; and was entered into after March 25, 2008, something that did not occur here. Under those circumstances, a party seeking review under the Federal Arbitration Act would have a more difficult time contending the parties "expressly and unambiguously" agreed not to require use of vacatur review under the California Arbitration Act. As noted, under the California Arbitration Act, the parties may agree to expanded merits based review. (*Cable Connection, Inc.,* at pp. 1339–1340; *Gueyffier v. Ann Summers, Ltd., supra,* 43 Cal.4th at p. 1185.) This factual scenario is not before us and we express no view on it.

### B. Standards of Judicial Review Under the Federal Arbitration Act

#### 1. When the arbitrator exceeds his or her powers

 In federal court, there is one certain relevant statutory provision and a possible second way in which the merits of an arbitration award can be attacked. The relevant certain method for challenging the merits of an arbitration award, albeit extremely limited, is in title 9 United States Code section 10(a)(4) which provides in part: "In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—[¶] (4) where the arbitrators exceeded their powers . . . ." The United States Supreme Court has described this narrow scope of judicial review: "It is not enough for petitioners to show that the panel committed an error—or even a serious error. [Citations.] 'It is only when [an] arbitrator

strays from interpretation and application of the agreement and effectively "dispense[s] his own brand of industrial justice" that his decision may be unenforceable.' [Citation.]" (*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. ___, ___ [176 L.Ed.2d 605, 130 S.Ct. 1758, 1767]; see *United Paperworkers v. Misco, Inc.* (1987) 484 U.S. 29, 38 [98 L.Ed.2d 286, 108 S.Ct. 364]; *Steelworkers v. Enterprise Corp.* (1960) 363 U.S. 593, 597 [4 L.Ed.2d 1424, 80 S.Ct. 1358].) Even gross, " 'painfully clear' " or "obvious" errors are insufficient to permit vacatur under title 9 United States Code section 10(a)(4) which is the relevant statutory vacatur provision. (*Halim v. Great Gatsby's Auction Gallery, Inc.* (7th Cir. 2008) 516 F.3d 557, 563; *Bull HN Information Systems, Inc. v. Hutson* (2000) 229 F.3d 321, 330; *DiRussa v. Dean Witter Reynolds Inc.* (2d Cir. 1997) 121 F.3d 818, 824.)

### 2. When the arbitrator's award is returned in manifest disregard of the law

It is less clear in federal court that an arbitration award can be attacked because the arbitrator has acted in manifest disregard of the law. At one point, there was Supreme Court authority for the proposition that in federal court an award may be vacated if it is made in manifest disregard of the law. (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 942 [131 L.Ed.2d 985, 115 S.Ct. 1920] ["parties bound by arbitrator's decision not in 'manifest disregard' of the law"]; *Shearson/American Express Inc. v. McMahon* (1987) 482 U.S. 220, 259 [96 L.Ed.2d 185, 107 S.Ct. 2332] ["Judicial review is still substantially limited to the four grounds listed in § 10 of the Arbitration Act and to the concept of 'manifest disregard' of the law."]; *Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 656 [87 L.Ed.2d 444, 105 S.Ct. 3346] (dis. opn. of Stevens, J.) ["Arbitration awards are only reviewable for manifest disregard of the law, 9 U.S.C. §§ 10, 207 . . ."]; *Wilko v. Swan* (1953) 346 U.S. 427, 436–437 [98 L.Ed. 168, 74 S.Ct. 182], overruled on other grounds in *Rodriguez de Quijas v. Shearson/Am. Exp.* (1989) 490 U.S. 477, 484 [104 L.Ed.2d 526, 109 S.Ct. 1917] ["the interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation"].)

However, in *Hall Street Associates, L.L.C. v. Mattel, Inc., supra,* 552 U.S. at pages 579–580, the United States Supreme Court considered whether an arbitration provision may be vacated when the litigants agree in writing the district court may vacate an award when it is not supported by substantial evidence or when the arbitrator's legal conclusions are erroneous. In evaluating that issue, the Supreme Court adverted to the argument of *Hall Street Associates, L.L.C.* that since *Wilko v. Swan, supra,* 346 U.S. at pages 436–437 "expandable judicial review authority" has been accepted as the controlling law. (*Hall Street Associates, L.L.C.,* at p. 584.) But in *Hall Street*

*Associates, L.L.C.*, the Supreme Court held that issue of the scope of judicial review of an arbitration award was not before it in *Wilko.* Rather, the issue in *Wilko* was whether section 14 of the Securities Act of 1933 (15 U.S.C. § 77a et seq.) voided an agreement to arbitrate. (*Wilko v. Swan, supra,* 346 U.S. at pp. 434–438.) And in *Hall Street Associates, L.L.C. v. Mattel, Inc., supra,* 552 U.S. at page 584, the Supreme Court noted the *Wilko* holding concerning the effect of section 14 of the Securities Act of 1933 was later overruled in *Rodriguez de Quijas v. Shearson/Am. Exp., supra,* 490 U.S. at page 484. The Supreme Court explained: "Although it is true that the Court's discussion includes some language arguably favoring Hall Street's position, arguable is as far as it goes. [¶] The *Wilko* Court was explaining that arbitration would undercut the Securities Act's buyer protections when it remarked (citing FAA § 10) that '[p]ower to vacate an [arbitration] award is limited,' [346 U.S., at p. 436], and went on to say that 'the interpretations of the law by the arbitrators in contrast to manifest disregard [of the law] are not subject, in the federal courts, to judicial review for error in interpretation,' [*id.,* at pp. 436–437]. Hall Street reads this statement as recognizing 'manifest disregard of the law' as a further ground for vacatur on top of those listed in § 10, and some Circuits have read it the same way. [Citations.] Hall Street sees this supposed addition to § 10 as the camel's nose: if judges can add grounds to vacate (or modify), so can contracting parties." (*Hall Street Associates, L.L.C. v. Mattel, Inc., supra,* 552 U.S. at pp. 584–585.)

The Supreme Court then proceeded to explain that *Wilko* could not be read as asserted by *Hall Street Associates, L.L.C.*: "But this is too much for *Wilko* to bear. Quite apart from its leap from a supposed judicial expansion by interpretation to a private expansion by contract, Hall Street overlooks the fact that the statement it relies on expressly rejects just what Hall Street asks for here, general review for an arbitrator's legal errors. Then there is the vagueness of *Wilko*'s phrasing. Maybe the term 'manifest disregard' was meant to name a new ground for review, but maybe it merely referred to the § 10 grounds collectively, rather than adding to them. See, *e.g., Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* [(1985) 473 U.S. 614, 656 [87 L.Ed.2d 444, 105 S.Ct. 3346]] ('Arbitration awards are only reviewable for manifest disregard of the law, 9 U.S.C. §§ 10, 207'); *I/S Stavborg v. National Metal Converters, Inc.* [(2d Cir. 1974) 500 F.2d 424, 431]. Or, as some courts have thought, 'manifest disregard' may have been shorthand for § 10(a)(3) or § 10(a)(4), the paragraphs authorizing vacatur when the arbitrators were 'guilty of misconduct' or 'exceeded their powers.' See, *e.g., Kyocera, supra,* [341 F.3d at page 997]. We, when speaking as a Court, have merely taken the *Wilko* language as we found it, without embellishment, see *First Options of Chicago, Inc. v. Kaplan,* [*supra,* 514 U.S. at page 942] and now that its meaning is implicated, we see no reason to accord it the

significance that Hall Street urges." (*Hall Street Associates, L.L.C. v. Mattel, Inc., supra*, 552 U.S. at p. 585.)

Thus, in *Hall Street Associates, L.L.C.*, the Supreme Court cast doubt on whether the manifest disregard of the law rule remains viable. But later in the opinion, the Supreme Court explained: "In holding that §§ 10 and 11 provide exclusive regimes for the review provided by the statute, we do not purport to say that they exclude more searching review based on authority outside the statute as well. The FAA is not the only way into court for parties wanting review of arbitration awards: they may contemplate enforcement under state statutory or common law, for example, where judicial review of different scope is arguable. But here we speak only to the scope of the expeditious judicial review under §§ 9, 10, and 11, deciding nothing about other possible avenues for judicial enforcement of arbitration awards." (*Hall Street Associates, L.L.C. v. Mattel, Inc., supra*, 552 U.S. at p. 590.)

The last time the United States Supreme Court addressed the manifest disregard of the law issue was in *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp., supra*, 559 U.S. at page ___ [130 S.Ct. at page 1768]. In *Stolt-Nielsen S. A.*, the district court judge vacated the award because it was made in manifest disregard of the law. The court of appeals concluded otherwise. (*Id.* at pp. ___–___ [130 S.Ct. at pp. 1766–1767].) The Supreme Court declined to address the effect of *Hall Street Associates, L.L.C.* on the award. (*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp., supra*, 559 U.S. at p. ·___, fn. 3 [130 S.Ct. at p. 1768, fn. 3] ["We do not decide whether " 'manifest disregard' " survives our decision in [*Hall Street Associates, L.L.C.*] as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10."].)

After the Supreme Court issued its opinion in *Hall Street Associates, L.L.C.*, some federal courts of appeals have declined to decide whether the manifest disregard of the law standard remains legally viable. (*Kashner Davidson Securities Corp. v. Mscisz* (1st Cir. 2010) 601 F.3d 19, 22.) Some courts have held the manifest disregard of the law standard is no longer an independent legal standard for review of arbitration awards. (*Frazier v. Citifinancial Corp., LLC* (11th Cir. 2010) 604 F.3d 1313, 1324; *Citigroup Global Markets Inc. v. Bacon* (5th Cir. 2009) 562 F.3d 349, 350, 355; see *Nicholas v. KBR, Inc.* (5th Cir. 2009) 565 F.3d 904, 909, fn. 4.) Other courts of appeals have held that the manifest disregard of the law standard remains viable, not as an independent ground for vacatur, but as a judicial gloss or shorthand for setting aside an award under the Federal Arbitration Act—particularly title 9 United States Code section 10(a)(4). (*Comedy Club, Inc. v. Improv West Associates* (9th Cir. 2009) 553 F.3d 1277, 1290; *Stolt-Nielsen S. A. v. AnimalFeeds*

*Internat. Corp.* (2d Cir. 2008) 548 F.3d 85, 95, overruled on another ground in *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp., supra*, 559 U.S. at pp. \_\_\_–\_\_\_ [130 S.Ct. at pp. 1766–1767].) The Sixth Circuit has stated the manifest disregard of the law doctrine survives the analysis in *Hall Street Associates, L.L.C.* (See *Citigroup Global Markets, Inc. v. Bacon, supra*, 562 F.3d at pp. 355–356.)

■ Obviously, the extent to which the manifest disregard of the law standard survives *Hall Street Associates, L.L.C.* is uncertain. We need not address the issue of whether the manifest disregard of the law standard of review survives *Hall Street Associates, L.L.C.* in whole, as a judicial gloss on the statutorily enumerated grounds, or not at all. Rather, we will evaluate the interim awards under both title 9 United States Code section 10(a)(4) and the manifest disregard of the law test—the course chosen by the Supreme Court in *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp., supra*, 559 U.S. at page \_\_\_ [130 S.Ct. at page 1768].

■ The most prevalent manifest disregard of the law test contains two elements. The first element is the arbitrator must know the governing rule of law and refuse to apply it or ignore it. The second element is that the law ignored by the arbitrator is well defined, explicit, and clearly applicable to the case. (*Porzig v. Dresdner, Kleinwort, Benson, North America LLC* (2d Cir. 2007) 497 F.3d 133, 139; *Kashner Davidson Securities Corp. v. Mscisz* (1st Cir. 2008) 531 F.3d 68, 75; *Collins v. D.R. Horton, Inc.* (9th Cir. 2007) 505 F.3d 874, 879–880; *Kergosien v. Ocean Energy, Inc.* (5th Cir. 2004) 390 F.3d 346, 355, overruled on another point in *Citigroup Global Markets Inc. v. Bacon, supra*, 562 F.3d at p. 355; *Electronic Data Systems Corp. v. Donelson* (6th Cir. 2007) 473 F.3d 684, 691.) One court articulates the rule as arising when the arbitrator knew the applicable law but expressly willfully disregarded or ignored it. (*Asociación de Empleados del Estado Libre Asociado de Puerto Rico v. Unión Internacional de Trabajadores de la Industria de Automoviles* (1st Cir. 2009) 559 F.3d 44, 47, 49.) The Seventh Circuit limits the manifest disregard of the law situation to an order requiring the parties to violate the law—one that does not adhere to the legal principles specified by the contract. (*Halim v. Great Gatsby's Auction Gallery, Inc., supra*, 516 F.3d at p. 563; *George Watts & Son, Inc. v. Tiffany & Co.* (7th Cir. 2001) 248 F.3d 577, 581.) The Eighth, Ninth, Tenth and Eleventh Circuits define manifest disregard of the law as when the arbitrator identifies the applicable, governing law and then ignores it. (*Frazier v. Citifinancial Corp., LLC, supra*, 604 F.3d at p. 1322; *Bosack v. Soward* (9th Cir. 2009) 586 F.3d 1096, 1104; *DMA Internat. Inc. v. Qwest Communications Internat., Inc.* (10th Cir. 2009) 585 F.3d 1341, 1345; *McGrann v. First Albany Corp.* (8th Cir. 2005) 424 F.3d 743, 749; *St John's Mercy Medical Center v. Delfino* (8th Cir. 2005) 414 F.3d 882, 884.)

The Second Circuit has characterized the manifest disregard of the law as involving extreme situations. (*Telenor Mobile Communications AS v. Storm LLC* (2d Cir. 2009) 584 F.3d 396, 407 ["Examples of manifest disregard therefore tend to be extreme, such as 'explicitly reject[ing] controlling precedent' or otherwise reaching a decision that 'strains credulity' or lacks even a 'barely colorable' justification."].) Mere factual or legal errors are insufficient to permit vacatur using the manifest disregard of the law standard; rather, there must be more than error or misunderstanding with respect to factual matters or the law. (*DMA Internat. Inc. v. Qwest Communications Internat., Inc., supra*, 585 F.3d at p. 1344; *Telnor Mobile Communications AS v. Storm LLC, supra*, 584 F.3d at p. 407; *Asociación de Empleados del Estado Libre Asociado de Puerto Rico v. Unión Internacional de Trabajadores de la Industria de Automoviles, supra*, 559 F.3d at p. 49; *McCarthy v. Citigroup Global Markets Inc.* (1st Cir. 2006) 463 F.3d 87, 93–94, overruled on a different point in *Hall Street Associates, L. L. C. v. Mattel, Inc., supra*, 552 U.S. at p. 584.)

### C. None of the Reasons Advanced by Plaintiffs for Vacating the Partial Awards Could Be Applied by a United States District Court

#### 1. The arbitrator's decision to allow the classes to seek restitution and equitable relief pursuant to Business and Professions Code section 17200

The arbitration demands seek restitution and equitable relief pursuant to Business and Professions Code section 17200. Both arbitration demands allege: "At all times pertinent to this Claim and Demand for Class Arbitration, [plaintiffs] failed to comply with the California Labor Code § 200 *et seq.* and . . . Business and Professions Code § 17200 *et seq.* in that Claimants, as well as all those current and former employees similarly situated to Claimants throughout California, originated and closed loans but were not properly paid the incentive compensation earned on those loans on a semi-monthly basis as provided by Labor Code § 204, or upon the termination of their employment with [plaintiffs] as provided by Labor Code §§ 201 and 202." In addition, defendants sought the imposition of penalties pursuant to Labor Code section 204.[1] Also, the requested Business and Professions Code section 17200 relief,

---

[1] Labor Code section 204 states: "(a) All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or 204.2, earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays. Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month.

which included injunctive relief and disgorgement requests, was premised on violations of Labor Code sections 201 through 204. Further, defendants sought restitution premised upon Labor Code sections 201 through 204 and Business and Professions Code section 17200. The arbitrator granted plaintiffs' summary adjudication motion in part and dismissed defendants' Labor Code section 204 penalty claims. But the arbitrator ruled defendants could pursue their Business and Professions Code section 17200 unfair competition claims including seeking injunctive relief pursuant to Business and Professions Code section 17203.[2] The arbitrator ruled defendants could base their Business and Professions Code section 17200 unfair competition claims on violations of Labor Code section 204. Judge White vacated the arbitrator's ruling stating: "The court finds that the arbitrator exceeded his powers in granting class certification by: . . . issuing a ruling and certifying a class for a California Labor Code section 204 claim, notwithstanding the fact that Section 204 does not provide for a private right of action."

■ Defendants argue the arbitrator's determination as to their Business and Professions Code section 17200 claims could not be set aside by a

---

However, salaries of executive, administrative, and professional employees of employers covered by the Fair Labor Standards Act, as set forth pursuant to Section 13(a)(1) of the Fair Labor Standards Act, as amended through March 1, 1969, in Part 541 of Title 29 of the Code of Federal Regulations, as that part now reads or may be amended to read at any time hereafter, may be paid once a month on or before the 26th day of the month during which the labor was performed if the entire month's salaries, including the unearned portion between the date of payment and the last day of the month, are paid at that time. [¶] (b) (1) Notwithstanding any other provision of this section, all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period. [¶] (2) An employer is in compliance with the requirements of subdivision (a) of Section 226 relating to total hours worked by the employee, if hours worked in excess of the normal work period during the current pay period are itemized as corrections on the paystub for the next regular pay period. Any corrections set out in a subsequently issued paystub shall state the inclusive dates of the pay period for which the employer is correcting its initial report of hours worked. [¶] (c) However, when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees. [¶] (d) The requirements of this section shall be deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven calendar days following the close of the payroll period."

[2] Business and Professions Code section 17203 provides: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state."

federal district court. We agree. Business and Professions Code section 17200 states, "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." In *Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266–1267 [10 Cal.Rptr.2d 538, 833 P.2d 545], our Supreme Court explained: "The Unfair Business Practices Act defines 'unfair competition' as any 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising . . . .' (§ 17200.) The Legislature intended this 'sweeping language' to include ' "anything that can properly be called a business practice and that at the same time is forbidden by law." ' [Citation.] In drafting the act, the Legislature deliberately traded the attributes of tort law for speed and administrative simplicity." (See also *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 561–567 [71 Cal.Rptr.2d 731, 950 P.2d 1086]; *Hernandez v. Atlantic Finance Co.* (1980) 105 Cal.App.3d 65, 71–73 [164 Cal.Rptr. 279].) Business and Professions Code section 17200 "borrows" violations of federal, state or local law and treats them as unlawful practices which are independently actionable. (*State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1102–1103 [53 Cal.Rptr.2d 229]; see *Gregory v. Albertson's, Inc.* (2002) 104 Cal.App.4th 845, 857 [128 Cal.Rptr.2d 389]; *Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.* (2001) 92 Cal.App.4th 886, 894–895 [112 Cal.Rptr.2d 304].) Given the statutory basis of defendants' claims, any unfairness theory they assert must be "tethered" to some declared legislative policy. (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 186–187 [83 Cal.Rptr.2d 548, 973 P.2d 527]; *Durell v. Sharp Healthcare* (2010) 183 Cal.App.4th 1350, 1364 [108 Cal.Rptr.3d 682].) ▮ And the reach of Business and Professions Code section 17200 extends to wage and salary based Labor Code violations. (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173–178 [96 Cal.Rptr.2d 518, 999 P.2d 706] [wrongful withholding of wages in violation of Lab. Code, § 203]; *Hudgins v. Neiman Marcus Group, Inc.* (1995) 34 Cal.App.4th 1109, 1126 [41 Cal.Rptr.2d 46] [wrongful retention of commissions in violation of Lab. Code, § 221]; *People v. Los Angeles Palm, Inc.* (1981) 121 Cal.App.3d 25, 32–35 [175 Cal.Rptr. 257] [unpaid minimum wages in violation of Lab. Code, § 351].)

▮ Because Business and Professions Code section 17200 is in the disjunctive, it prohibits practices that are "unfair," "unlawful" or "fraudulent." (*Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647 [58 Cal.Rptr.2d 89]; *State Farm Fire & Casualty Co. v. Superior Court, supra,* 45 Cal.App.4th at p. 1102.) Thus, it is unnecessary for a business practice to be only unlawful in order for the conduct to be subject to Business and Professions Code section 17200. (*Cel-Tech Communications, Inc. v. Los*

*Angeles Cellular Telephone Co., supra,* 20 Cal.4th at p. 180; *Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 938 [134 Cal.Rptr.2d 101].) The "unfair" standard is intentionally broad to allow courts to have maximum discretion to prohibit schemes to defraud. (*Podolsky v. First Healthcare Corp., supra,* 50 Cal.App.4th at p. 647; *State Farm Fire & Casualty Co. v. Superior Court, supra,* 45 Cal.App.4th at pp. 1103–1104.) The unfairness test has been described as follows: "Determination of whether a business practice or act is 'unfair' within the meaning of the [Unfair Competition Act] entails examination of the impact of the practice or act on its victim, ' ". . . balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . ." [Citation.]' (*State Farm Fire & Casualty Co. v. Superior Court, supra,* 45 Cal.App.4th at pp. 1103–1104.) In general the 'unfairness' prong 'has been used to enjoin deceptive or sharp practices. . . .' (*Samura v. Kaiser Foundation Health Plan, Inc.* (1993) 17 Cal.App.4th 1284, 1299, fn. 6, [22 Cal.Rptr.2d 20].)" (*Klein v. Earth Elements, Inc.* (1997) 59 Cal.App.4th 965, 969–970 [69 Cal.Rptr.2d 623].) An "unfair" business practice is actionable under the unfair competition law even if it is not "deceptive" or "unlawful." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th at p. 180; *Podolsky v. First Healthcare Corp., supra,* 50 Cal.App.4th at p. 647.) The term "fraud" is not predicated upon proof of the common law tort of deceit or deception but simply means whether the public is likely to be deceived. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 211 [197 Cal.Rptr. 783, 673 P.2d 660]; *Klein v. Earth Elements, Inc., supra,* 59 Cal.App.4th at p. 970; *State Farm Fire & Casualty Co. v. Superior Court, supra,* 45 Cal.App.4th at p. 1105.) ■ In terms of unfair competition, any person or entity who has engaged in, engages in, or threatens to engage in it may be enjoined from such misconduct. (Bus. & Prof. Code, §§ 17201, 17203; *State Farm Fire & Casualty Co. v. Superior Court, supra,* 45 Cal.App.4th at p. 1102.) Whether particular conduct is "unfair," "unlawful" or "fraudulent" within the meaning of Business and Professions Code section 17200 is generally a question of fact which depends on the circumstances of each case. (*Paduano v. American Honda Motor Co., Inc.* (2009) 169 Cal.App.4th 1453, 1469 [88 Cal.Rptr.3d 90] [" 'Whether a practice is deceptive, fraudulent, or unfair is generally a question of fact which requires "consideration and weighing of evidence from both sides" . . .' "]; *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1472 [49 Cal.Rptr.3d 227] ["the determination is one question of fact, requiring consideration and weighing of evidence from both sides . . ."].)

Thus, Business and Professions Code section 17200 provides an independent basis for potential liability apart from Labor Code section 204. And the arbitrator expressly dismissed all of defendants' penalty claims. There is no

independent Labor Code section 204 claim pending in this case. Rather, defendants are asserting claims for restitution which are expressly provided for by the unfair competition law. (Bus. & Prof. Code, § 17200; *Cortez v. Purolator Air Filtration Products Co., supra*, 23 Cal.4th at p. 173.) Finally, the sole issue raised by plaintiffs is that the Labor Code section 204 claims cannot be pursued. There are a myriad of defenses which remain to be litigated. Thus, a federal district court judge could not lawfully set aside the arbitrator's ruling on defendants' Business and Professions Code section 17200 unfair competition claims. (9 U.S.C. § 10(a)(4); *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp., supra*, 559 U.S. at p. ___ [130 S.Ct. at p. 1767]; *Halim v. Great Gatsby's Auction Gallery, Inc., supra*, 516 F.3d at p. 563; *Porzig v. Dresdner, Kleinwort, Benson, North America LLC, supra*, 497 F.3d at p. 139.)

### 2. The arbitrator's decision concerning those claims resolved in the *Walker* federal and *Zamora* class actions

On November 1, 2007, the arbitrator returned an interim award concerning the classes. The arbitrator ruled: Mr. Godina was not given lawful notice of the *Zamora* class action and was not a party thereto; Mr. Godina did not have standing to appeal Judge Dunn's ruling denying the motion to vacate the judgment; and therefore neither res judicata nor collateral estoppel principles apply to Mr. Godina's claims. And the arbitrator ruled the factual and legal issues alleged in Mr. Godina's arbitration demand were not identical to those in the *Zamora* class action.

The arbitrator similarly found that the resolution of the *Zamora* class action did not entirely bar the claims posited in the Bundy-Sanchez-Prevost arbitration demand. The arbitrator stated: "Bundy, Sanchez and Prevost were specifically excluded from the Zamora settlement as individuals. They had filed their demand for arbitration on August 16, 2006. Their claim defines the class as '. . . all employees whose principal function is the sale of loan products . . .' and who are subject to the Forfeiture Provision. That definition is more expansive than the 'Account Executive' class definition found in the Zamora claim. The Bundy, et al. Demand for Arbitration also included claims under California Labor Code [section] 204 for all persons other than officers, directors, and controlling persons employed by Countrywide who were not properly paid pursuant to section 204 and all those who left the employment of Countrywide and were not paid pursuant to the incentive compensation plan. The claimants are described as those designated as 'Account Executives or by any other title.' [¶] The Zamora claim included branch and [C]all [C]enter employees/Account Executives, but limited the class to those Countrywide employees who had terminated their employment at a branch between April, 2002 and June, 2006 or at a [C]all [C]enter

between January 1, 2005 and June, 2006. The Bundy, et al. class includes employees who terminated their employment during time periods other than those in the Zamora case. The Godina class claims are equally more expansive than those found in Zamora. [¶] The testimony of [Countrywide's] employee/person most knowledgeable . . . , establishes that there are several incentive plans, not merely one, and that all positions are eligible to earn an incentive, thereby expanding the potential size of the classes in both the Godina and Bundy, et al. class actions. [¶] There is a contested issue of fact as to whether the class descriptions in both the Godina and Bundy, et al. cases are the same as those stated in the Zamora case. Based on the claims, exhibits and declarations in both cases, as submitted in this motion, it is found that the Godina and Bundy, et al. claims and claimants are substantially more extensive than those in the Zamora case. Although further evidence on this subject may be introduced at the certification hearing, the Zamora class appears to have grossly under-represented those employees with the same potential claims. [¶] It is clear that, as to the claims made in the Zamora case, those class members who were actually given notice are barred from making those same claims again in either the Godina or Bundy, et al. cases. [¶] The Motions for Summary Judgment are denied, except as to the Zamora class members who received lawful notice or otherwise participated in the fairness proceedings and settlement, and who seek to assert those same claims in the present actions."

As to the *Walker* federal class action, the arbitrator found the settlement documents, final approval motion, settlement negotiations and judgment did not specifically refer to unpaid bonuses; the waiver of unpaid claims pursuant to Civil Code section 1542[3] was not controlling; and the claims in the present arbitration demands were broader than in the *Walker* federal class action. Judge White ruled: "The court finds that the arbitrator exceeded his powers in granting class certification by: . . . improperly including in the class those individuals who already fully and finally released their claims against Countrywide in two earlier-resolved class action matters—*Ronald Zamora v. Countrywide Financial Corp.* and *Walker v. Countrywide* . . . [and] permitting Godina to make a collateral attack on the *Zamora* judgment, even though he had no proper jurisdiction over Godina or his claims, based on the fact that . . . Judge . . . Dunn specifically ruled that Godina was provided the requisite proper notice of the *Zamora* settlement and was a member of the *Zamora* class who had fully and finally released his claims against Countrywide . . . ."

---

[3] Civil Code section 1542 states, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

■ Defendants argue a federal district court would be barred under title 9 United States Code section 10(a)(4) and the manifest disregard of the law rule from vacating the arbitrator's award as it relates to the limited preclusive effects of the *Walker* federal and *Zamora* class actions. We agree. As to the Bundy-Sanchez-Prevost arbitration, they were expressly excluded from the *Zamora* class action settlement. The *Zamora* class action judgment was entered on February 15, 2007. Further, the *Zamora* class action only extended to all "California-based Full Spectrum Lending Account Executives" while the arbitrator reasonably could conclude the class as certified in this case is materially broader. In the October 24, 2008 partial award, the arbitrator described the class as certified, "The combined Class and Sub-Class include all persons employed in or who were to receive, as part of the [Incentive] Plan's bonus provisions, payments in addition to their regular salary based on 'loans sold' to customers, whether they were Account Executives, Team Managers or Branch Managers or any of the numerous variations of those titles that Respondents attached to those who were the beneficiaries of the Plan and subject to its Forfeiture Provisions between August 16, 2002 and the present, whether currently employed or who left Respondents' employ and were not paid the incentive earned pursuant to the plan." The arbitrator found the definition of the class in the Bundy-Sanchez-Prevost arbitration was broader than that in the *Zamora* class action. In denying plaintiffs' summary judgment motion, the arbitrator explicitly excluded from the Bundy-Sanchez-Prevost and the Godina arbitration classes all of plaintiffs' employees who were actually given notice of the *Zamora* class action settlement. As can be noted, the *Zamora* class action extended to a narrower group of employees than those described in the present case.

As to the *Walker* federal class action, the two classes are different than those in the Bundy-Sanchez-Prevost and the Godina arbitrations. The *Walker* federal class action judgment was entered on August 15, 2006. The Bundy-Sanchez-Prevost arbitration demand was dated August 16, 2006. The Godina arbitration demand was likewise dated August 16, 2006. In other words, the *Walker* federal class action and the Bundy-Sanchez-Prevost and the Godina arbitrations involve different timeframes. Further, the *Walker* federal class action extended only to "Account Executives" who were employed during varying specific timeframes depending on their place of employment.

■ The relevant rule of law concerning the application of res judicata is as follows: "But where the second action between the same parties is upon a different cause or demand, the principle of *res judicata* is applied much more narrowly. In this situation, the judgment in the prior action operates as an estoppel, not as to matters which might have been litigated and determined, but 'only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered.' [Citations.] Since the cause of action involved in the second proceeding is not swallowed

by the judgment in the prior suit, the parties are free to litigate points which were not at issue in the first proceeding, even though such points might have been tendered and decided at that time. But matters which were actually litigated and determined in the first proceeding cannot later be relitigated." (*Commissioner v. Sunnen* (1948) 333 U.S. 591, 597–598 [92 L.Ed. 898, 68 S.Ct. 715]; see *Taylor v. Sturgell* (2008) 553 U.S. 880, ___ [171 L.Ed.2d 155, 128 S.Ct. 2161, 2171] ["Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.' "]; *United States v. Munsingwear* (1950) 340 U.S. 36, 38 [95 L.Ed. 36, 71 S.Ct. 104, 105–106] [" 'The general principle announced in numerous cases is that a right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact once so determined must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified.' "].)

Here, the *Walker* federal class action did not involve the very same claims posited in the Bundy-Sanchez-Prevost and the Godina arbitrations. Also, the very same claims in defendants' demands were not actually litigated in terms of the time period, the scope of the classes and the relief sought in the *Walker* federal class action. (*Nakash v. Superior Court* (1987) 196 Cal.App.3d 59, 69 [241 Cal.Rptr. 578] ["Res judicata was never intended to be used as a vehicle for forever 'immunizing' any party in a continuing business relationship from liability for continuous or recurrent breaches of contract, conspiracy directed toward such breaches, or for continuous or recurrent tortious misconduct."]; Rest.2d Judgments, § 24, com. d, pp. 201–202.)

Plaintiffs present separate arguments concerning the effect of the *Zamora* class action on the Godina arbitration. They reason that Mr. Godina cannot act as an adequate class representative because his claims are barred by the settlement of the *Zamora* class action. The arbitrator found the *Zamora* class action was filed on April 20, 2006; the Godina class arbitration demand was filed on August 16, 2006; and the Godina class arbitration demand was served on plaintiffs' counsel's office on August 18, 2006. The evidence adduced by plaintiffs before the arbitrator indicated Mr. Godina was mailed a claim and opt-out form in the *Zamora* class action on November 29, 2006, at 7515 Winnetka Avenue, unit No. 114, Winnetka, California 91306. The arbitrator's November 1, 2007 interim award states: "It is found as a matter of fact, undisputed by [plaintiffs], that Mr. Godina, while still employed [by plaintiffs], purchased a residence at 17065 Bircher Street, Granada Hills, California

in August, 2005, resided there for five months before his employment with [plaintiffs] ended and for 12 months prior to the notice of settlement, and throughout the Zamora litigation. Furthermore, he financed the purchase of his home through Countrywide, and in 2005 Countrywide noted this residence as being his address on the U.S. Treasury Form 1098 (Mortgage Interest Statement) issued to him." The arbitrator further found there were irregularities in the class notification and documentation process in the *Zamora* class action.

Also, the arbitrator found Mr. Godina was never notified of the settlement of the *Zamora* class action; neither Judge Dunn nor counsel for the plaintiffs in the *Zamora* class action were notified of the Godina arbitration; and neither Judge Dunn nor the attorneys for the *Zamora* class action plaintiffs were notified of the Godina arbitration demand. In addition, no notification was made by plaintiffs to the arbitrator on October 17, 2006. Finally, the arbitrator found that on October 17, 2006, plaintiffs made a request for a continuance to respond to defendants' arbitration demands and set a scheduling conference on January 18, 2007. This was done without notifying the arbitrator of the *Zamora* class action settlement. January 18, 2007, the date selected for the arbitration scheduling conference, was three days after the last day to file an objection to the settlement in the *Zamora* class action.

The arbitrator's ruling is supported by Mr. Godina's declaration and other portions of the evidentiary record. Mr. Godina declared he never received the notice of the *Zamora* class action settlement. When the *Zamora* class action settlement notice was mailed to the Winnetka apartment address, Mr. Godina lived in his Granada Hills residence on Bircher Street. As noted, plaintiffs' evidence admitted the notice was sent to the Winnetka apartment address. And Mr. Godina declared, plaintiffs were well aware of his residence address because he secured his mortgage from Countrywide Home Loans. The arbitrator could reasonably find that notice of the settlement was not given to Mr. Godina in a fashion reasonably calculated to apprise interested parties of the opportunity to object. This is particularly true given the fact there is evidence plaintiffs were aware of Mr. Godina's address and did not serve the settlement notice on his residence. Moreover, plaintiffs, well aware of Mr. Godina's existing arbitration demand, failed to apprise Judge Dunn of its existence. No notice was given to Mr. Godina's counsel of the *Zamora* class action settlement. And plaintiffs' counsel failed to advise the arbitrator of the existence of the *Zamora* class action settlement until after it was consummated. Under these circumstances, Mr. Godina would not be bound by the *Zamora* class action settlement. (*Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 811–812 [86 L.Ed.2d 628, 105 S.Ct. 2965]; *Hypertouch, Inc. v.*

*Superior Court* (2005) 128 Cal.App.4th 1527, 1539 [27 Cal.Rptr.3d 839].)
We need not discuss the arbitrator's finding that the class representative in the
*Zamora* class action did not adequately represent the interests of the class. If
true, this provides a separate ground for refusing to accord res judicata effect
to the settlement of the *Zamora* class action. (*Phillips Petroleum Co. v. Shutts,
supra*, 472 U.S. at pp. 811–812; *Hansberry v. Lee* (1940) 311 U.S. 32, 42–43
[85 L.Ed. 22, 61 S.Ct. 115].)

Finally, plaintiffs argue that Mr. Godina is bound by Judge Dunn's oral
April 12, and May 23, 2007 rulings. In so ruling, Judge Dunn denied
Mr. Godina's motion to set aside the judgment concluding the *Zamora*
class action. To begin with, the arbitrator could reasonably conclude that
Mr. Godina was never provided with proper notice and Judge Dunn's ruling
changes nothing in that respect. The judgment in the *Zamora* class action was
entered on February 15, 2007. All Judge Dunn did on April 12, 2007, was to
deny Mr. Godina's motion to vacate the February 15, 2007 judgment. No
legal authority allowed Judge Dunn on April 12, 2007, to vacate the February
15, 2007 judgment. In fact, Judge Dunn ruled Mr. Godina had no standing
and was not properly before the court. And Judge Dunn indicated the issue of
the validity of the judgment, as it related to Mr. Godina, was a matter that
could be presented to the arbitrator. Judge Dunn's ruling had no preclusive
effect on the arbitrator. Thus, a federal district court judge could not lawfully
set aside the arbitrator's res judicata findings. (9 U.S.C. § 10(a)(4);
*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp., supra*, 559 U.S. at p. ___
[130 S.Ct. at p. 1767]; *Halim v. Great Gatsby's Auction Gallery, Inc., supra*,
516 F.3d at p. 563; *Porzig v. Dresdner, Kleinwort, Benson, North America
LLC, supra*, 497 F.3d at p. 139.)

3. The issue of plaintiffs' employees who did not agree to
arbitration before the American Arbitration Association

Plaintiffs presented evidence to the arbitrator that there were three arbitra-
tion agreements. As noted, the first arbitration agreement was allegedly
initially used in the second half of 2002 but has a date on the bottom of both
pages which indicates it was revised in "5/03"; as signed by Mr. Bundy and
Ms. Sanchez, bears the May 2003 revision date; was relied upon in the
underlying arbitrations brought by Mr. Bundy, Ms. Sanchez, Mr. Prevost and
Mr. Godina; and provided for arbitration before the National Arbitration
Forum, American Arbitration Association, or JAMS. A second arbitration
agreement was dated December 22, 2002, and permits arbitration before the
American Arbitration Association. A third undated arbitration agreement did
not provide for arbitration before the American Arbitration Association but
otherwise paralleled the other agreements. This third agreement provided for
arbitration only before the National Arbitration Forum. Unlike the first and

second agreements, the third document does not have a revision date at the bottom of a page. Judge White found: "The court finds that the arbitrator exceeded his powers in granting class certification by: . . . improperly certifying in the class those individuals who have not consented to the jurisdiction of the [American Arbitration Association] . . . ."

We agree with defendants that Judge White's stated ground was not a basis for setting aside the partial award. Defendants presented evidence to the arbitrator that all employees were required to agree to arbitration. Before the arbitrator, plaintiffs presented no evidence of a single class member who did not sign an agreement vesting potential arbitral jurisdiction in the American Arbitration Association. The arbitration agreements signed by Mr. Bundy and Ms. Sanchez which permit arbitration before the American Arbitration Association were revised effective March 2003. As noted, plaintiffs also presented evidence of a December 2, 2002 agreement. The December 2, 2002 agreement provides specified claims could be arbitrated before the American Arbitration Association. Plaintiffs also provided an unsigned arbitration agreement which is undated. The undated agreement provided for arbitration only before the National Arbitration Forum. Yet, plaintiffs never presented evidence any class members were signatories to the undated agreement. Plaintiffs' failure to do so can give rise to the logical inference that no class member executed the undated agreement which stated the National Arbitration Forum was the exclusive potential alternative dispute resolution provider. (*Interstate Circuit v. U. S.* (1939) 306 U.S. 208, 225–226 [83 L.Ed. 610, 59 S.Ct. 467]; *Mammoth Oil Co. v. United States* (1927) 275 U.S. 13, 52–53 [72 L.Ed. 137, 48 S.Ct. 1].) Given this state of the record, the arbitrator's decision concerning the agreements to arbitrate before the American Arbitration Association could not lawfully be set aside by a federal district court judge. (9 U.S.C. § 10(a)(4); *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp., supra,* 559 U.S. at p. ___ [130 S.Ct. at p. 1767]; *Halim v. Great Gatsby's Auction Gallery, Inc., supra,* 516 F.3d at p. 563; *Porzig v. Dresdner, Kleinwort, Benson, North America LLC, supra,* 497 F.3d at p. 139.)

Finally, there is no merit to plaintiffs' arguments that the present record supports the conclusion they did not agree to classwide arbitration. They never claimed in the trial court they had not consented to classwide arbitration. They never argued to the arbitrator they objected to classwide arbitration. And the present record indicates plaintiffs in fact agreed to classwide arbitration at the commencement of the proceedings. The present record thus indicates they consented to classwide arbitration and, in any event, the issue has been forfeited because it was not presented to the arbitrator and Judge White. (*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp., supra,* 559 U.S. at pp ___–___ [130 S.Ct. at pp. 1774–1775] [consent]; *T.Co Metals v. Dempsey Pipe & Supply* (2d Cir. 2010) 592 F.3d 329, 346, fn. 10 [forfeiture].)

## IV. DISPOSITION

The order under review is reversed. Upon remittitur issuance, an order is to be entered denying the amended petition to vacate. Defendants, Thomas Bundy, Misty Sanchez, Kevin Prevost, and David Godina, shall recover their costs incurred on appeal from plaintiffs, Countrywide Financial Corporation and Full Spectrum Lending, Inc.

Mosk, J., and Kriegler, J., concurred.

Respondents' petition for review by the Supreme Court was denied November 17, 2010, S186358.