[No. A076191. First Dist., Div. Four. Aug. 27, 1997.]

KENNETH H. KLEIN, Plaintiff and Appellant, v.
EARTH ELEMENTS, INC., Defendant and Respondent.

**COUNSEL**

Stone & Moore and John Douglas Moore for Plaintiff and Appellant.

Ryan, Andrada & Lifter, Joseph D. Ryan and Bruce A. McIntosh for Defendant and Respondent.

**OPINION**

**ANDERSON, P. J.**—Appellant Kenneth H. Klein proposes that a pet food distributor commits an act of unfair competition within the meaning of Business and Professions Code,[1] section 17200 when it unwittingly causes contaminated pet food to be distributed into the stream of commerce. Accordingly, he seeks to overturn the summary judgment in favor of Earth Elements, Inc.[2] It is undisputed that Earth Elements acted promptly to recall the contaminated products, advertised the recall effort and afforded restitution to customers. We conclude that the distributor's conduct was neither illegal, unfair nor fraudulent within the meaning of section 17200. Therefore, we affirm the judgment.

## I. FACTS

In June 1995 Earth Elements was in the business of distributing premium pet food products under the name "Nature's Recipe." Southwest Pet Products, Inc., manufactured the food and was responsible for procuring the grain and for quality assurance.

Prior to June 26, 1995, Earth Elements had no knowledge that its products were unmerchantable. On or about June 26, the company received customer complaints that pets were refusing to eat its food or were vomiting upon eating it. Testing revealed that the affected lots contained abnormally high levels of vomitoxin, a toxin produced by a mold which occurs naturally in

---

[1] All statutory references are to the Business and Professions Code.
[2] Doing business as Nature's Recipe Pet Foods, sued herein as Nature's Recipes, Inc., (hereafter Earth Elements).

grains. When proper moisture and heat conditions are present simultaneously, the mold can propagate to harmful levels. The toxin is difficult to detect because it is distributed unevenly in the grain.

Once independent laboratory testing confirmed the consumer complaints, Earth Elements announced an extensive recall campaign which was intentionally overinclusive in terms of the lots selected for recall. Then when test results came in indicating the existence and extent of vomitoxin contamination, Earth Elements extended the recall to additional lots and issued a second recall notice. As well, Earth Elements sent press releases to print and broadcast media and established a toll free number for consumer inquiries.

The company also notified its distributors directly about the recall drive, gave credit to all distributors and retailers for returned product, paid them for all documented expenses related to the recall, refunded or replaced product for all consumers upon request but without proof of purchase, and reimbursed consumers for verifiable veterinary expenses and property damage claims.

In all, the recall covered over 7,500 tons of product. Product recall losses totaled $3,757,839 as of December 31, 1995, exclusive of lost profits. For that year, approximately 25 to 30 percent of Earth Elements' total sales were made to California customers.

In August 1995 Klein, on behalf of the general public, sued Earth Elements under the Unfair Competition Act, section 17200 et seq. (UCA), seeking injunctive relief, restitution and disgorgement of moneys based on the alleged acts and practices of unfair competition described as "sold and distributed defective and/or unmerchantable pet food products."

Earth Elements lost on demurrer but won on summary judgment and this appeal followed.

## II. DISCUSSION

Under the UCA, unfair competition means and includes "*any* unlawful, unfair or fraudulent business *act or* practice . . . ."[3] (§ 17200, italics added.) The act authorizes courts to enjoin such conduct and order restitution

---

[3]Prior to the 1992 amendment to the UCA, which added the emphasized words, section 17200 was construed as directed at ongoing wrongful business conduct, something beyond a single transaction. (*State of California* ex rel. *Van de Kamp* v. *Texaco, Inc.* (1988) 46 Cal.3d 1147, 1169-1170 [252 Cal.Rptr. 221, 762 P.2d 385].)

According to recent authority, all that changed with addition of the two 3-letter words—"any" and "act." (*Podolsky* v. *First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 653-654 [58

of money or property obtained by means of unfair competition. (§ 17203.) Actions for relief under the UCA can be prosecuted "by any person acting for the interests of itself, its members or the general public." (§ 17204.)

■ The trial court determined that Earth Elements had not engaged in any prohibited conduct under the UCA—whether unlawful, unfair, or deceptive. Klein challenges each point.

■ An unlawful business practice or act is an act or practice, committed pursuant to business activity, that is at the same time forbidden by law. (*Farmers Ins. Exchange* v. *Superior Court* (1992) 2 Cal.4th 377, 383 [6 Cal.Rptr.2d 487, 826 P.2d 730].) Virtually any law can serve as the predicate for a section 17200 action. (*State Farm, Fire & Casualty Co.* v. *Superior Court* (1996) 45 Cal.App.4th 1093, 1102-1103 [53 Cal.Rptr.2d 229].)

■ It is Klein's theory that liability imposed under the doctrines of "strict products liability and . . . breach of the implied warranty of fitness" will support an independent action under the "unlawful" prong of section 17200. (Original emphasis.) While these doctrines do provide for civil liability upon proof of their elements they do not, by themselves, describe acts or practices that are illegal or otherwise forbidden by law. And Klein has not presented any argument or evidence to back up his claim that Earth Elements broke any law by unwittingly distributing contaminated pet food. In our view the unintentional distribution of a defective product is beyond the scope and policy of the "unlawful" prong of section 17200.

■ Determination of whether a business practice or act is "unfair" within the meaning of the UCA entails examination of the impact of the practice or act on its victim, " '. . . balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the

Cal.Rptr.2d 89]; Antitrust and Trade Regulation Law Section of the State Bar of California, Cal. Antitrust Law (Supp. 1994) §§ 10.01, 10.04.)

Earth Elements argues that the 1992 Legislature did not intend to alter the need for ongoing conduct, pointing to language in the Legislative Counsel's Digest for the June 25, 1992, version of Senate Bill No. 1586 (1991-1992 Reg. Sess.) as follows: "This bill would also provide that where the conduct involves advertising, the publication or broadcast of the advertisement shall constitute a minimum of a single act of unfair competition, with as many additional violations as there are persons who are subjected to the advertisement, as specified. It would authorize the court to impose civil penalties, as specified, for each violation." Senate Bill No. 1586, as enacted, *omitted* all but the last sentence of the above language from the Legislative Counsel's Digest. The plain meaning of the amendment, as enacted, is that the UCA now covers single acts of misconduct. In any event, the omitted language does not support Earth Element's contention.

alleged victim . . . .' [Citation.]" (*State Farm Fire & Casualty Co.* v. *Superior Court, supra,* 45 Cal.App.4th at pp. 1103-1104.) In general the "unfairness" prong "has been used to enjoin deceptive or sharp practices. . . ." (*Samura* v. *Kaiser Foundation Health Plan, Inc.* (1993) 17 Cal.App.4th 1284, 1299, fn. 6 [22 Cal.Rptr.2d 20].)

■ Clearly, Earth Elements' conduct does not fit the "unfairness" bill. While dogs did get sick, the company's act was *accidental* and, once discovered, it moved quickly to abate the harm. To set the standard at perfection or no mistakes is too high a price to pay for eliminating the potential harm to the dogs from the unwitting distribution of contaminated food. The balance here, is in Earth Elements' favor. Moreover, there is absolutely nothing deceptive or sharp about the company's behavior. To the contrary, its conduct was exemplary.

■ Finally, the test for "fraud" as contemplated by the statute is whether the public is likely to be deceived. (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1267 [10 Cal.Rptr.2d 538, 833 P.2d 545]; *Saunders* v. *Superior Court* (1994) 27 Cal.App.4th 832, 839 [33 Cal.Rptr.2d 438].) Unlike common law fraud, a section 17200 violation can be established even if no one was actually deceived, relied upon the fraudulent practice or sustained any damage. (*State Farm Fire & Casualty Co.* v. *Superior Court, supra,* 45 Cal.App.4th at p. 1105.) Klein claims that consumers would be deceived because the label on the defective product stated: "You can feed NATURE'S RECIPE . . . with confidence that you are doing something good for your dog."

■ The public is not likely to be deceived by Earth Elements' unintentional distribution of unmerchantable pet food. While the customer buying "Nature's Recipe" would anticipate that the product was pet-edible, that same customer would not be *deceived* when the food turned out to be contaminated. While we expect that food we buy will not be rotten or contaminated, we know that sometimes it is—this is a fact of life. As soon as a dog refused to eat or vomited, the customer would know something was wrong and, as we all have contemplated doing from time to time, might have returned the defective product to the store, contacted the manufacturer, etc. The point is, there was no misleading here because Earth Elements did nothing to cause the consuming public to accept the contaminated food as uncontaminated; indeed, by instituting a speedy and extensive recall effort, the company did what it could to inform the public of the problem.

The judgment is affirmed.

Poché, J., and Reardon, J., concurred.