[No. A118541. First Dist., Div. One. Mar. 5, 2008.]

TERRY D. BULLER, Plaintiff and Appellant, v.
SUTTER HEALTH et al., Defendants and Respondents.

## COUNSEL

Schrag & Baum, Thomas F. Schrag, James S. Baum; Meade & Schrag, Tyler Meade, Michael Schrag and Deborah A. Kemp for Plaintiff and Appellant.

Jones Day, Jeffrey A. LeVee and Samantha S. Eisner for Defendants and Respondents.

## OPINION

**SWAGER, J.**—In this action brought under California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.), appellant Terry D. Buller appeals from the judgment of dismissal entered after the trial court sustained

without leave to amend the demurrer of respondents Sutter Health and Alta Bates Summit Medical Center on the ground that the complaint fails to state a cause of action. We affirm.

## ALLEGATIONS OF THE COMPLAINT AND PROCEDURAL BACKGROUND

On February 2, 2007, appellant filed his complaint as a class action, alleging that respondents' billing practices violate the UCL and the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.). The complaint also alleges a third cause of action for "Unjust Enrichment/Restitution/ Constructive Trust."[1]

Appellant purports to represent a class of consumers who have private medical insurance and who have received a bill for medical services from respondents beginning on February 1, 2003. The essence of the complaint is that the billing invoices overstate the amount due because respondents have an undisclosed policy of discounting balances for consumers who pay promptly. The complaint further alleges that this practice violates the UCL and the CLRA because respondents do not inform consumers about the availability of the discount, and because consumers who pay in full in a timely manner without requesting a discount are not automatically given corresponding refunds.

The following factual allegations are taken from the complaint. Appellant is insured by Blue Cross. From 2004 to 2006, he was treated at Alta Bates Summit Medical Center for a shoulder injury. He received billing statements from respondents for the portion of the charges that his insurance did not cover. He paid these charges in full within 30 days of receiving these bills. He never requested a discount.

The complaint alleges that respondents "have an undisclosed policy of allowing a 10 to 44% discount if a patient's bill is paid within a specified period of time, typically 30 or 60 days. [They] do not disclose this prompt-pay discount. It is hidden and does not appear on the face of the bill." "If the consumer pays the bill within 30 days or 60 days, he does not receive a refund. Nor is the consumer advised that there is any way to seek a

---

[1] The notice of appeal states that the appeal is from the order sustaining the demurrer without leave to amend. The appeal, however, as appears from the briefs and the points made on appeal, is directed solely to appellant's UCL claim. We are entitled to consider that any claim of error is deemed abandoned with respect to the CLRA and common law claims. (See *Spearman v. State Farm Fire & Casualty Co.* (1986) 185 Cal.App.3d 1105, 1113, fn. 4 [230 Cal.Rptr. 264] [failure to discuss cause of action on appeal from trial court's order sustaining demurrer constitutes abandonment of that cause of action on appeal].)

refund. . . . There is no information . . . which would lead a reasonable consumer who has private medical insurance to seek the discount, or discern that the prompt-pay discount is available to all who pay promptly." The complaint does reveal, however, that respondents describe "Financial Assistance Programs" on the reverse side of the billing statements, advising patients who have financial need to call a phone number. The complaint alleges that discounts are actually available to all customers who contact respondents, regardless of their financial need.[2]

On March 23, 2007, respondents filed a demurrer to the complaint, alleging that it failed to state a claim for violations of the UCL and the CLRA, and that, as a result, the third common law cause of action also was not viable. With respect to the UCL claim, respondents argued that the complaint did not demonstrate unfairness as appellant was charged according to the terms of his insurance policy. They also argued that the fraud allegation was flawed, as respondents were not under an affirmative duty to disclose their discount policy.

On May 29, 2007, the trial court issued its order sustaining respondents' demurrer to the complaint without leave to amend. The court dismissed appellant's attempt in his opposition to characterize respondents' billing statements as affirmative misrepresentations. Rather, the court found the complaint had to be read as alleging a failure to disclose. Citing to *Daugherty v. American Honda Motor Co., Inc.* (2006) 144 Cal.App.4th 824, 838 [51 Cal.Rptr. 3d 118] (*Daugherty*), the court determined that a claim under the "fraud" prong of the UCL does not lie where one has no duty to disclose the operative fact. The court concluded that respondents had no duty to disclose the existence of their discount policy. The claim under the "unfair" prong of the UCL also failed because the public policies cited to by appellant regarding discounts do not apply to patients who have private medical insurance. The court also found appellant failed to state a claim under the "unlawful" prong of the UCL because respondents' practice does not violate the CLRA. This appeal followed.

## DISCUSSION

### I.  *Standard of Review*

On appeal from a judgment of dismissal after a demurrer is sustained without leave to amend, the reviewing court assumes the truth of all facts

---

[2] Appellant requests that we take judicial notice of a document entitled "Discount on Self-Pay Account Balances Procedure" prepared by the Alta Bates Summit Medical Center business office. The request is denied. For purposes of this appeal, however, we assume appellant's factual allegations concerning respondents' policies are true.

properly pleaded by the plaintiff. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6 [40 Cal.Rptr.3d 205, 129 P.3d 394]; *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 [6 Cal.Rptr.3d 457, 79 P.3d 569]; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We also accept as true all facts that may be implied or reasonably inferred from those expressly alleged. (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403 [44 Cal.Rptr.2d 339].) We do not assume the truth of " ' "contentions, deductions or conclusions of fact or law." ' " (*Evans v. City of Berkeley, supra,* at p. 6, quoting *Blank, supra,* at p. 318.) We review the trial court's action de novo and exercise our own independent judgment whether a cause of action has been stated under any legal theory. (*Moore v. Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479].) We review the court's refusal to allow leave to amend under the abuse of discretion standard. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].)

## II. *The UCL*

█ Enacted in 1977, "The purpose of the UCL 'is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.' [Citation.] Section 17200 defines unfair competition to 'mean and include "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [the false advertising law (§ 17500 et seq.)]." [Citation.]' [Citation.] Because section 17200 is written in the disjunctive, a business act or practice need only meet one of the three criteria—unlawful, unfair, *or* fraudulent—to be considered unfair competition under the UCL." (*Daro v. Superior Court* (2007) 151 Cal.App.4th 1079, 1092–1093 [61 Cal.Rptr.3d 716].) Appellant contends that his complaint states a claim under both the "fraudulent" and the "unfair" prongs of the UCL.

### A. *Appellant Did Not State a Cause of Action for Unfair Competition Based on the "Fraudulent" Prong of the UCL*

█ It has been stated that "In order to state a cause of action under the fraud prong of the UCL a plaintiff need not show that he or others were actually deceived or confused by the conduct or business practice in question. 'The "fraud" prong of [the UCL] is unlike common law fraud or deception. A violation can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage. Instead, it is only necessary to show that members of the public are likely to be deceived.' [Citations.]" (*Schnall v. Hertz Corp.* (2000) 78 Cal.App.4th 1144, 1167 [93 Cal.Rptr.2d 439].) Appellant claims that the allegations of his complaint satisfy the "likely to deceive" standard because respondents' bills "misstate[] the amount due." We disagree.

■   Fairly read, the complaint's focus is on respondents' alleged failure to disclose their prompt-pay discount policy. The distinction is significant as it appears settled that "Absent a duty to disclose, the failure to do so does not support a claim under the fraudulent prong of the UCL." (*Berryman v. Merit Property Management, Inc.* (2007) 152 Cal.App.4th 1544, 1557 [62 Cal.Rptr.3d 177] [failure to disclose detailed listings or breakdowns of specific escrow charges comprising transfer or document fees did not violate the UCL].) This is because a consumer is not "likely to be deceived" by the omission of a fact that was not required to be disclosed in the first place.

We agree with respondents that this case is controlled by *Daugherty* and *Bardin v. DaimlerChrysler Corp.* (2006) 136 Cal.App.4th 1255 [39 Cal.Rptr.3d 634]. In *Bardin,* the plaintiff alleged that an automobile manufacturer had " 'omitted and concealed material facts about the exhaust manifolds' " allegedly causing members of the public to be deceived about the quality, performance, and durability of those manifolds. (*Bardin, supra,* at p. 1275.) The court found that, in order to be deceived, "members of the public must have had an expectation or an assumption" about the materials used in manufacturing the vehicle. (*Ibid.*) The operative complaint failed to state a claim because it did not allege that "(1) members of the public had any expectation or made any assumptions that DCC's exhaust manifolds would be made from cast iron, as opposed to tubular steel, (2) the public had any expectation or made any assumptions regarding the life span of the exhaust manifold of a DCC vehicle, or (3) facts showing DCC had made any representation of any kind, much less any misrepresentation, regarding its vehicles." (*Ibid.*) The court found the complaint's "vague reference to plaintiffs' assumption that the exhaust manifolds were 'quality components' " to be insufficient, because the allegation "merely concludes the public would likely be deceived, without pleading any facts showing the basis for that conclusion." (*Ibid.*)

A similar fact pattern was at issue in *Daugherty.* The plaintiff contended the failure to disclose an engine problem that might develop after a car's warranty had expired violated the UCL because it was " 'likely to deceive' " customers " 'into believing that no such defect exists.' " (*Daugherty, supra,* 144 Cal.App.4th 824, 838.) Relying on *Bardin,* the court found otherwise: "We cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is 'likely to deceive' anyone within the meaning of the UCL. . . . The only expectation buyers could have had about the F22 engine was that it would function properly for the length of Honda's express warranty, and it did. Honda did nothing that was likely to deceive the general public by failing to disclose that its F22 engine might, in the fullness of time, eventually dislodge the front balancer shaft oil seal and cause an oil leak." (*Ibid.*)

■ The same principle applies to the allegations in the complaint before us. Appellant's complaint does not allege respondents have an affirmative duty to disclose the availability of a prompt-pay discount. Accordingly, patients in his position are not likely to be operating under the expectation that they are entitled to a discount. Thus, respondents' alleged failure to reveal their discount policy is not conduct that is "likely to deceive" patients.[3]

Apparently recognizing this point, appellant claims that the trial court "erroneously recast" his complaint as one alleging a failure to disclose. He focuses on paragraph 38 of his complaint. That paragraph states: "Plaintiff, members of the general public and the Classes are likely to be deceived by Defendants' business practice of invoicing patients without adequately disclosing its prompt-pay policy on the bill, the only written information the patient receives stating that a payment is due. Stating that the amount shown on the initial invoice is the amount which must be paid for the services rendered is deceptive and likely to deceive, when in fact, the amount due, if paid within the proscribed [*sic*] time periods is as much as 44% less than the amount billed. The method of billing and the actual bill is likely to deceive consumers as to the true amount of the bill if paid within 30–60 days." From this language, appellant argues that his complaint satisfactorily alleges that respondents misrepresent the amount owed whenever they send an invoice to a patient with private insurance.

Other portions of the complaint, however, repeatedly allege failure to disclose. For example, paragraph 1 includes the allegation that respondents "deceptively hide and *fail to disclose* that a 10 to 44% discount is available to all privately insured patients for prompt payments . . . ." Paragraph 6 states: "Defendants' *failure to disclose* that a 10 to 44% prompt-pay discount is available to all privately insured patients . . . violates California consumer protection statutes, including" the UCL.[4] (Italics added.) And paragraph 36 states that "Defendants and each of them *fail to adequately disclose* their policy of discounting the amount billed to insured patients by up to 44% if payment in full is received within 30 days of the patient's first invoice or a lesser percentage if payment in full is received between 31 and 60 days."

[3] Appellant also relies on the federal district court case of *Falk v. General Motors Corp.* (N.D.Cal. 2007) 496 F.Supp.2d 1088 for the proposition that a failure to disclose is actionable under the UCL if it satisfies one of the four tests for the tort of fraud by failure to disclose as set forth in *LiMandri v. Judkins* (1997) 52 Cal.App.4th 326, 336 [60 Cal.Rptr.2d 539]. In the first place, *Falk* is a federal case and is not binding on California state courts. Secondly, the court in *Falk* applied federal procedural rules pertaining to motions to dismiss, not state rules concerning demurrers. In any event, to the extent *Falk* compels the conclusion that respondents have a duty to disclose their discount policy we respectfully disagree.

[4] We have some doubt as to whether the complaint even adequately alleges a failure to disclose. Paragraph 31 states that the back of respondents' bill contains information regarding possible discounts and provides a phone number for patients to call for more information.

(Italics added.) Accordingly, we agree with the trial court that appellant was required to demonstrate that respondents are under a duty to disclose their discount policy.

Appellant also argues that he is challenging respondents' business practice of "inflating and misrepresenting" the balance due on the initial invoice. We are not convinced that appellant has properly characterized respondents' conduct. In the first place, it does not appear from the complaint that the balance was either inflated or misrepresented. The complaint does not allege that he was improperly charged under the terms of his insurance policy. The balance is exactly what a patient with private insurance owes after the insurance company pays its portion of the charges. The patient owes the remaining amount when the bill is received. It is only after contacting respondents that the patient may be offered a prompt-pay discount. Appellant's attempt to skew the complaint in order to avoid the logical consequences of his own allegations is unconvincing.

Regardless, the cases relied on by appellant do not assist his cause. In *People v. Dollar Rent-A-Car Systems, Inc.* (1989) 211 Cal.App.3d 119 [259 Cal.Rptr. 191] (*Dollar*), the contract that the car rental company provided to its customers stated that the customers agreed to pay " '[t]he retail value of repairing all damages to said vehicle resulting from collision or upset . . . .' " (*Id.* at p. 127.) The retail charge represented an inflation of the company's actual costs, however, as it received a discounted wholesale repair rate from the body shops that it used and also purchased its own parts at a more than 30 percent discount. (*Id.* at p. 125.) The company argued that its conduct was not fraudulent as "there was no misrepresentation regarding the cost of repairs since they billed the customers only what the contract permitted." (*Id.* at p. 129.) The court concluded, however, that the "practice of charging its customers a higher 'retail repair rate' without explanation or substantiation is a deceptive business practice which falls within the protection of [the UCL]." (*Ibid.*)

Appellant claims that respondents' billing practice is just as deceptive as the rental car contract because the amount a patient ends up paying will be lower if he or she obtains a discount. There is a fundamental difference, however, between the practice of artificially inflating the price of a service beyond its actual cost and the practice of voluntarily offering customers discounts on a properly priced service. The complaint contains no allegation that the initial amount charged by respondents is improper on its face. In contrast, in *Dollar,* the court found there was no basis upon which the car rental company could justify charging customers for repair costs in excess of what the company had actually paid. (*Dollar, supra,* 211 Cal.App.3d 119, 130.)

Appellant's reliance on *McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457 [49 Cal.Rptr. 3d 227] (*McKell*), is similarly misplaced. In that case, the trial court had erroneously sustained a demurrer to a claim that a mortgage lender's stated closing fees concealed the fact that it was charging for services above their actual cost. On review, the appellate court found that "As in [*Dollar*], Washington Mutual's practice of charging its customers more for services than the actual cost of those services, with no indication to the customers that they were doing so, may constitute a deceptive business practice within the meaning of the UCL [citation], as a reasonable consumer likely would believe that fees charged in connection with a home mortgage loan bore some correlation to services rendered." (*Id.* at p. 1472.)

Again, *McKell* is distinguishable as it involved the practice of deceptively overcharging consumers.[5] In the present case, the complaint does not allege patients are charged in excess of the rate that is contractually provided for by their insurance companies. Thus, contrary to appellant, we believe the initial bill that a patient receives does, in fact, state the "true amount" that is due. Accordingly, we conclude that the complaint cannot be read to allege that respondents have made any affirmative misrepresentations with respect to the amounts charged to insured patients.

B. *Appellant Did Not State a Cause of Action for Unfair Competition Based on the "Unfair" Prong of the UCL*

■ "In general the 'unfairness' prong 'has been used to enjoin deceptive or sharp practices. . . .' [Citation.]" (*Klein v. Earth Elements, Inc.* (1997) 59 Cal.App.4th 965, 970 [69 Cal.Rptr.2d 623].) An "unfair" business practice is actionable under the UCL even if it is not "deceptive" or "unlawful." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527]; *Podolsky v. First Healthcare Corp.* (1996) 50 Cal.App.4th 632, 647 [58 Cal.Rptr.2d 89].)

■ Courts have observed that "there is some uncertainty about the appropriate definition of the word 'unfair' in consumer cases brought under section 17200." (*Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1400 [48 Cal.Rptr. 3d 770] (*Camacho*).) In *Cel-Tech,* the Supreme Court adopted the following test regarding the definition of unfairness with respect to actions between competitors: "When a plaintiff who claims to have suffered injury from a direct competitor's 'unfair' act or

---

[5] For similar reasons we believe *Day v. AT & T Corp.* (1998) 63 Cal.App.4th 325 [74 Cal.Rptr.2d 55] and *Prata v. Superior Court* (2001) 91 Cal.App.4th 1128 [111 Cal.Rptr.2d 296] do not apply. These cases involved defendants who deceptively caused customers to incur increased charges or to make payments during an advertised payment-free period. Thus, they involved active misrepresentations, not failures to disclose.

practice invokes section 17200, the word 'unfair' in that section means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra,* 20 Cal.4th 163, 187.) "In handing down this ruling, the Supreme Court also made clear that *Cel-Tech* involved an action by a competitor alleging anticompetitive practices, and not an action by consumers for a business practice alleged to be unfair. [Citation.] It has been noted that this has resulted in a split in the Courts of Appeal. [Citation.] One line of cases applies *Cel-Tech*'s definition of 'unfair' to consumer cases [citation], the other recognizes the new *Cel-Tech* definition, but applies the old definitions to consumer cases [citation]."[6] (*Camacho, supra,* at p. 1401, fn. omitted.)

█ Appellant claims his complaint satisfies the old test for consumer cases articulated in *Motors, Inc. v. Times Mirror Co.* (1980) 102 Cal.App.3d 735 [162 Cal.Rptr. 543], viz., "the utility of the defendant's conduct [is weighed] against the gravity of the harm to the alleged victim . . . ." (*Id.* at p. 740.) However, as we have noted in prior opinions, "[t]his court . . . has followed the line of authority that . . . requires the allegedly unfair business practice be 'tethered' to a legislatively declared policy or has some actual or threatened impact on competition." (*Belton v. Comcast Cable Holdings, LLC* (2007) 151 Cal.App.4th 1224, 1239–1240 [60 Cal.Rptr.3d 631], citing *Gregory v. Albertson's, Inc.* (2002) 104 Cal.App.4th 845, 853–854 [128 Cal.Rptr.2d 389].)

Appellant makes no argument on appeal that his allegations are directly connected to any legislatively declared policy or threatened competition. Because appellant has given us no reason to depart from our prior holdings in *Belton* and *Gregory,* we will not consider whether his allegations could satisfy the unfairness tests as set forth in *Motors, Inc.,* or *Camacho.*

Finally, we note that it is fairly common for consumers to ask for and receive discounts on products and services. The amount of these discounts may vary depending on many factors. Arguably, requiring a business to state a discount on its initial invoice runs counter to the purpose of having

---

[6] We note the court in *Camacho* went on to craft yet another test for the "unfair" prong in the consumer context based on the factors that define unfairness under section 5 of the Federal Trade Commission Act (15 U.S.C. § 41 et seq.): "(1) The consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided. [Citation.] . . . This definition of 'unfair' is on its face geared to consumers and is for that reason appropriate in consumer cases. It is also suitably broad and is therefore in keeping with the 'sweeping' nature of section 17200." (*Camacho, supra,* 142 Cal.App.4th 1394, 1403, fns. omitted.)

discretionary discounts in the first place. Indeed, taken to their logical conclusion, appellant's arguments would effectively require a business to disclose all discretionary discounts it might offer. While we sympathize with appellant's frustration over his failure to benefit from respondents' discount policy, when viewed from the standpoint of consumers in general we believe respondents' practice is beneficial rather than harmful, inasmuch as they apparently are not required to offer privately insured patients any discounts whatsoever.

### III. *Failure to Allow Leave to Amend*

When a demurrer is sustained without leave to amend, " 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citations.]" (*Zelig v. County of Los Angeles, supra*, 27 Cal.4th 1112, 1126.)

The demurrer should be sustained and leave to amend denied only "where the facts are not in dispute, and the nature of the plaintiff's claim is clear, but, under the substantive law, no liability exists. Obviously no amendment would change the result." (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 946, p. 403; accord, *Kilgore v. Younger* (1982) 30 Cal.3d 770, 781 [180 Cal.Rptr. 657, 640 P.2d 793].)

To show abuse of discretion, plaintiff must show in what manner the complaint could be amended and how the amendment would change the legal effect of the complaint, i.e., state a cause of action. (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737]; *Careau & Co. v. Security Pacific Business Credit, Inc.* (1990) 222 Cal.App.3d 1371, 1388 [272 Cal.Rptr. 387]; accord, *Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].) This showing may be made either in the trial court or on appeal. (*Careau & Co., supra*, at p. 1386.)

Appellant does not contend that he should have been granted leave to amend his complaint. He argues only that the trial court erred in sustaining the demurrer. As we concur with the trial court's decision, we are left with no basis upon which we could conclude that appellant should have been granted leave to amend. We also need not address respondents' argument that appellant lacks standing to bring his lawsuit as a class action.

## DISPOSITION

The judgment is affirmed.

Marchiano, P. J., and Stein, J., concurred.