Filed 9/30/13  Langston v. South Coast Towing CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| ALLAN LANGSTON, | B241405 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC471173) |
| v. | |
| SOUTH COAST TOWING, INC. et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael L. Stern, Judge.  Reversed.

Arias Ozzello & Gignac, Mike Arias and Mark F. Didak for Plaintiff and Appellant.

Yee & Belilove, Steven R. Yee and Steve R. Belilove for Defendants and Respondents.

**INTRODUCTION**

Plaintiff and appellant Allan Langston (plaintiff) brought an action on behalf of himself and a class against defendants and respondents South Coast Towing, Inc.[1] (South Coast) and Tamar Ohayan (Ohayan) (collectively South Coast or defendants) based on defendants' alleged operation of a scheme in which they offered persons attending events (in plaintiff's case, a USC football game) to pay to park in private lots and, after the lots were full, posting "No Parking" signs, towing the vehicles, and charging the vehicles' owners a fee to redeem their vehicles. The complaint alleged three causes of action for violation of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 (section 17200)) premised on theories of unlawful, unfair, and fraudulent conduct; and causes of action for false advertising (Bus. & Prof. Code, § 17500 (section 17500)), elder and dependent financial abuse (Welf. & Inst. Code, §§ 15610.07, 15610.23, 15610.25 & 15610.30),[2] fraud, and violation of the Consumer Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.). The trial court sustained without leave to amend defendants' demurrer to all of plaintiff's causes of action except his causes of action for unfair competition based on fraud and violation of the CLRA, as to which causes of action the trial court sustained defendants' demurrer with leave to amend.[3] Plaintiff elected not to

---

[1] Plaintiff also named as defendants South Coast Towing Systems, Dennis Wong, and Felix Wong. South Coast Towing, Inc. contends that it was erroneously sued as "South Coast Towing Systems." South Coast Towing Systems, Dennis Wong, and Felix Wong are not parties to this appeal.

[2] Defendants' demurrer did not address the dependent adult financial abuse allegations in this cause of action. Although the trial court sustained without leave to amend defendants' demurrer to the cause of action—i.e., including the dependent adult financial abuse allegations—plaintiff's appeal addresses only the elder financial abuse allegations and thus appears to have abandoned the dependent adult financial abuse allegations in this cause of action.

[3] Neither Dennis Wong nor Felix Wong had filed a responsive pleading at the time the trial court heard defendants' demurrer.

amend his complaint, the time within which to amend the complaint expired, and the trial court entered judgment in favor of defendants. Plaintiff appeals. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

In his complaint, plaintiff alleged that he "paid persons who represented they were authorized to sell parking on a vacant lot at 1190 West 29th Street, Los Angeles, California (the '29th Street lot') while attending a USC football game at the Coliseum on October 30, 2010. There were no 'No Parking' signs posted when he parked his vehicle there and left to attend the game. Soon after the 29th Street lot filled up and those who paid to park there left for the Coliseum; however, witnesses observed persons posting 'No Parking' signs there, quickly followed by an efficient operation by South Coast defendants to tow away parked vehicles using tow trucks that had been parked nearby, out of view of the 29th Street lot, apparently for this purpose. This operation was facilitated by Dennis Wong, who signed vehicle impound authorization forms provided by South Coast defendants on behalf of himself and the other owner(s) of the 29th Street lot. When plaintiff and other class members returned to the 29th Street lot after the game they discovered their vehicles had been towed away, and that they could redeem their vehicles by going to South Coast defendants' impound lot at 3526 East Olympic Boulevard, Los Angeles, California 90023 and paying the required towing and impound fees, a portion of which exceeding $100 was paid by plaintiff (he was able to stop his credit card company from paying the remainder after complaining to it that the charge was fraudulent). In addition, plaintiff's vehicle was physically damaged as a result of defendants' handling it, causing him to incur repair bills in the approximate sum of $2,900." Plaintiff alleged that Ohayan is liable, inter alia, as the alter ego of South Coast.

The complaint defined the putative class as "'All persons in the State of California who suffered injury in fact and lost money or property as a result of being induced by one or more defendants to purchase parking at properties where, such defendant(s) represented by words and/or conduct, it was legal for such persons to park if the right to park was paid for, and who later lost money or property in the form of towing and/or

3

impound fees to redeem their vehicles, or suffered other damages, as a result of one or more defendants towing their vehicles.' The Class includes a subclass defined as, 'Every Class member who was age 65 or older, or was a disabled person, at the time he or she suffered injury in fact and lost money or property as a result of the conduct complained of.'"

Defendants demurred to plaintiff's complaint contending that the complaint failed to state facts sufficient to maintain plaintiff's claims on a class-wide basis and that each cause of action failed to state facts sufficient to constitute a cause of action (Code Civ. Proc., § 430.10, subd. (e)) and was fatally uncertain (Code of Civ. Proc., § 430.10, subd. (f)). Defendants further contended that the complaint failed to state facts establishing Ohayan's liability on an alter ego theory. The trial court sustained without leave to amend defendants' demurrer to plaintiff's causes of action for violation of the UCL based on unlawful and unfair conduct, false advertising, elder and dependent financial abuse, and fraud. It sustained with leave to amend plaintiff's causes of action for unfair competition based on fraud and violation of the CLRA.

## DISCUSSION

### I. Standard of Review

"On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, the standard of review is well settled. We give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171].) Further, we treat the demurrer as admitting all material facts properly pleaded, but do not assume the truth of contentions, deductions or conclusions of law. (*Ibid.*; *Aubry v. Tri–City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317] (*Aubry*).) When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. (*Zelig, supra,* 27 Cal.4th at p. 1126.) And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has

4

abused its discretion and we reverse. (*Ibid.*)" (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)

## II. The Class Allegations

Plaintiff purports to appeal from the trial court's ruling sustaining defendants' demurrer to the class allegations. The trial court made no such ruling. The trial court sustained defendants' demurrer as to each of plaintiff's causes of action, whether with or without leave to amend, because the causes of action failed to state facts sufficient to constitute a cause of action. The trial court did not rule on defendants' demurrer to the class allegations—i.e., that the complaint did not state facts sufficient to proceed on a class-wide basis. Presumably, the trial court did not rule on the class allegations because it did not need to reach that issue having otherwise disposed of plaintiff's entire action— i.e., because plaintiff had not asserted a viable cause of action, the trial court did not have to decide whether plaintiff could proceed on behalf of a class or he could proceed only on his own behalf. Because the trial court did not rule on this part of defendants' demurrer, the issue is not before us on appeal.[4]

## III. Fraud

Plaintiff contends that the trial court erred when it sustained without leave to amend his fraud cause of action. We agree.

"'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' [Citations.]" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) "In California, fraud must be pled specifically; general and conclusory allegations

_____

**4** Normally, whether a class action can proceed is determined on a motion for class certification, but if, as a matter of law, the class action is meritless, that can be determined by demurrer. (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 440; *Tucker v. Pacific Bell Mobile Services* (2012) 208 Cal.App.4th 201, 211.)

do not suffice. (*Stansfield v. Starkey* (1990) 220 Cal.App.3d 59, 74 [269 Cal.Rptr. 337]; *Nagy v. Nagy* (1989) 210 Cal.App.3d 1262, 1268 [258 Cal.Rptr. 787]; 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 662, pp. 111-112.) 'Thus "'the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.'" [Citation.] [¶] This particularity requirement necessitates pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered."' (*Stansfield, supra,* 220 Cal.App.3d at p. 73, italics in original.)" (*Id.* at p. 645.) Notwithstanding this rule of specificity of pleading a fraud claim, however, Witkin has stated, "the courts should not look askance at the complaint, and seek to absolve the defendant from liability, on highly technical requirements of form in pleading. . . . [¶] These views have been followed in a number of cases sustaining fraud complaints that would, on stricter scrutiny, be found defective." (5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 714, at p. 129.)

In his fraud cause of action, plaintiff alleged that defendants' parking lot towing scheme, "is fraudulent in that these defendants, and each of them, knowingly organized and engaged in a scheme to defraud plaintiff and Class members by luring them to park for special events at public venues on private property, pay for that parking, and after plaintiff and Class members left the property, to post 'no parking' signs so they could profit by towing and impounding the vehicles parked by plaintiff and Class members. The conduct of defendants, and each of them, constituted a representation by conduct and/or words to plaintiff and Class members that they could legally and safely park at those locations, upon which plaintiff and Class members reasonably relied to their detriment by paying for parking, and later having to pay much greater sums to redeem their vehicles from impound after they were towed. These defendants, and each of them, knew or acted with reckless disregard of the fact that such representations were false and that plaintiff and Class members were simply being lured into being victims of this fraudulent scheme."

Plaintiff's complaint alleged specific facts to state all of the elements of a fraud cause of action. (*Lazar v. Superior Court, supra,* 12 Cal.4th 638, 645.) The complaint

alleged that defendants falsely represented to him that he could pay to park in the 29th Street lot, the representation was knowingly false in that defendants posted "No Parking" signs once the lot was full and then towed his vehicle, defendants intended to induce reliance on the false representation—i.e., they "lured" plaintiff into parking in the lot, plaintiff "reasonably relied" on the false representation in paying to park in the lot, and plaintiff was damaged as a result of the false representation—i.e., his vehicle was damaged when towed and he incurred fees to redeem his vehicle from the tow lot.

Defendants contend that plaintiff's fraud cause of action was deficient because it failed to allege specific fact that showed who posted the "No Parking" signs. Plaintiff may not have alleged the specific identity of the person who posted the "No Parking" signs, but he did allege that "*defendants, and each of them*, knowingly organized and *engaged in a scheme* to defraud plaintiff and Class members by luring them to park for special events at public venues on private property, pay for that parking, and after plaintiff and Class members left the property, *to post 'no parking' signs . . . .*" (Italics added.) "Less specificity should be required of fraud claims 'when "it appears from the nature of the allegations that the defendant must necessarily possess full information concerning the facts of the controversy," [citation]; "[e]ven under the strict rules of common law pleading, one of the canons was that less particularity is required when the facts lie more in the knowledge of the opposite party . . . ."'" ([*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197] at p. 217.) Also 'considerations of practicality enter in' when multiple plaintiffs and defendants are involved. [Citation.]" (*Alfaro v. Community Housing Improvement Systems & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1384.) Here, from the allegations, it may be inferred that the facts concerning the identity of the participants lies more in the knowledge of defendants.

Defendants also contend that plaintiff's fraud cause of action is deficient because it did not make "any allegations regarding any purported representations made by [defendants.]" As set forth above, the complaint alleged that defendants falsely represented to plaintiff that he could pay to park in the 29th Street lot. Thus, the trial

7

court erred when it sustained without leave to amend defendants' demurrer to plaintiff fraud cause of action.

**IV.     UCL Violation Based on Unlawful, Unfair, and Fraudulent Conduct**

Plaintiff contends that the trial court erred in sustaining without leave to amend his unfair competition causes of action based on unlawful and unfair conduct, and in sustaining with leave to amend his cause of action for unfair competition based on fraudulent conduct.  The trial court erred.

*A.     Unlawful conduct*

The UCL's "coverage is 'sweeping, embracing "'anything that can properly be called a business practice and that at the same time is forbidden by law.'"'  [Citations.]" (*Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.)  "An 'unlawful' business practice or act within the meaning of the UCL 'is an act or practice, committed pursuant to business activity, that is at the same time *forbidden by law.*  [Citation.]'  (*Klein v. Earth Elements, Inc.* (1997) 59 Cal.App.4th 965, 969 [69 Cal.Rptr.2d 623].)  The California Supreme Court has explained that '[b]y proscribing "any unlawful" business practice, "[Business and Professions Code] section 17200 'borrows' violations of other laws and treats them as unlawful practices" that the unfair competition law makes independently actionable.  [Citation.]'  (*Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*[, *supra*,] 20 Cal.4th [at p.] 180 [83 Cal.Rptr.2d 548, 973 P.2d 527] (*Cel–Tech* ).)"  (*Bernardo v. Planned Parenthood Federation of America* (2004) 115 Cal.App.4th 322, 351-352.)  An unfair competition claim does not require the specific pleading required for a fraud cause of action.  (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 46-47.) Plaintiff's cause of action for violation of the UCL based on unlawful conduct asserted that defendants' alleged parking lot towing scheme violated various Vehicle and Civil Code sections, including Vehicle Code section 22658.  Vehicle Code section 22658,

subdivision (a)(1) through (4)[5], states the circumstances under which a vehicle properly may be towed from private property. Plaintiff alleged that none of those circumstances was present when defendants towed plaintiff's vehicle. Accordingly, plaintiff properly pleaded a cause of action for violation of the UCL based on defendants' alleged business practice of towing vehicles in violation of Vehicle Code section 22658, and the trial court erred in sustaining without leave to amend defendants' demurrer to this cause of action.[6] (*Bernardo v. Planned Parenthood Federation of America, supra,* 115 Cal.App.4th at pp. 351-352.)

---

[5]    Vehicle Code section 22658, subdivisions (a)(1) through (4) provide:

"(a) The owner or person in lawful possession of private property, including an association of a common interest development as defined in Section 1351 of the Civil Code, may cause the removal of a vehicle parked on the property to a storage facility that meets the requirements of subdivision (n) under any of the following circumstances:

"(1) There is displayed, in plain view at all entrances to the property, a sign not less than 17 inches by 22 inches in size, with lettering not less than one inch in height, prohibiting public parking and indicating that vehicles will be removed at the owner's expense, and containing the telephone number of the local traffic law enforcement agency and the name and telephone number of each towing company that is a party to a written general towing authorization agreement with the owner or person in lawful possession of the property. The sign may also indicate that a citation may also be issued for the violation.

"(2) The vehicle has been issued a notice of parking violation, and 96 hours have elapsed since the issuance of that notice.

"(3) The vehicle is on private property and lacks an engine, transmission, wheels, tires, doors, windshield, or any other major part or equipment necessary to operate safely on the highways, the owner or person in lawful possession of the private property has notified the local traffic law enforcement agency, and 24 hours have elapsed since that notification.

"(4) The lot or parcel upon which the vehicle is parked is improved with a single-family dwelling."

[6]    Because defendants' alleged violation of Vehicle Code section 22658 is a sufficient basis for plaintiff's UCL cause of action based on unlawful conduct, we need not address whether the other statutes on which plaintiff relied also are sufficient bases for plaintiff's cause of action.

### B. Unfair Conduct

"[A] practice may be deemed unfair even if not specifically proscribed by some other law." (*Cel–Tech, supra,* 20 Cal.4th at p. 180.) However, "[t]he standard for determining what business acts or practices are 'unfair' in consumer actions under the UCL is currently unsettled. (See *Aleksick v. 7–Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1192 [140 Cal.Rptr.3d 796] [public policy that is predicate for action must be tethered to specific constitutional, statutory or regulatory provisions]; *Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 539 [72 Cal.Rptr.3d 888] [applying balancing test, but also examining whether practice offends established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers]; *Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403 [48 Cal.Rptr.3d 770] [consumer injury must be substantial, and neither outweighed by countervailing benefits nor avoidable by consumers]; *Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 285 [37 Cal.Rptr.3d 434] [impact of the act or practice on victim is balanced against reasons, justifications and motives of the alleged wrongdoer].)" (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 380, fn. 9.)

Plaintiff, in his cause of action for violation of the UCL based on unfair conduct, contended that defendants' alleged parking lot towing scheme is "unfair, offends public policy, is immoral, unscrupulous, unethical, deceitful, fraudulent, and offensive, and causes substantial injury to consumers." The cause of action incorporated the allegation that defendants' scheme violated various Vehicle and Civil Code sections. Plaintiff's allegation that defendants engaged in a scheme pursuant to which they lured persons to park their vehicles in private parking lots for a fee and, when the lots were full, posted "No Parking" signs, towed the vehicles, and charged fees to redeem the vehicles from the tow lots is sufficient to state a cause of action for unfair conduct in violation of the UCL under any standard. (*Zhang v. Superior Court, supra,* 57 Cal.4th at p. 380, fn. 9.) Accordingly, the trial court erred in sustaining without leave to amend defendants' demurrer to plaintiff's cause of action for violation of the UCL based on unfair conduct.

10

### C. Fraudulent Conduct

"The '"fraud" contemplated by section 17200's third prong bears little resemblance to common law fraud or deception. The test is whether the public is likely to be deceived.' (*State Farm Fire & Casualty Co. v. Superior Court* [(1996)] 45 Cal.App.4th [1093,] 1105, citing *Committee on Children's Television, Inc. v. General Foods Corp.* [(1983)] 35 Cal.3d [197,] 211.) Stated otherwise, '"Fraudulent," as used in the statute, does not refer to the common law tort of fraud but only requires a showing members of the public "'are likely to be deceived.'"' (*Saunders v. Superior Court* [(1994)] 27 Cal.App.4th [832,] 839, citing *Bank of the West v. Superior Court* [(1992)] 2 Cal.4th [1254,] 1267; see also *Rubin v. Green* (1993) 4 Cal.4th 1187, 1200–1201 [17 Cal.Rptr.2d 828, 847 P.2d 1044].) 'This means that a section 17200 violation, unlike common law fraud, can be shown even if no one was actually deceived, relied upon the fraudulent practice, or sustained any damage.' (*State Farm Fire & Casualty Co. v. Superior Court, supra,* at p. 1105; see also *Klein v. Earth Elements, Inc., supra,* 59 Cal.App.4th at p. 970.)" (*South Bay Chevrolet v. General Motors Acceptance Corp.* (1999) 72 Cal.App.4th 861, 888.)

Plaintiff, in his cause of action for violation of the UCL based on fraudulent conduct, asserted that defendants engaged in the alleged parking lot towing scheme "knowing, or with reckless or conscious disregard of the fact, that they or persons acting in concert with them lured plaintiff and Class members to pay to park at locations from which their vehicles would later be towed on the pretext that they had parked illegally, and that members of the Class reasonably relied to their detriment on defendants' representations that they were providing Class members with legal parking. Defendants and each of them did so with the intent to share in the wrongfully obtained profits of the fraudulent scheme." Plaintiff sufficiently alleged facts that he and members of the public were likely to be deceived by defendants' scheme. (*South Bay Chevrolet v. General Motors Acceptance Corp., supra,* 72 Cal.App.4th at p. 888.) Accordingly, the trial court, with respect to the claim for violation of the UCL based on fraudulent conduct, erred in sustaining with leave to amend defendants' demurrer.

11

## V.    False Advertising

Plaintiff contends that the trial court erred in sustaining without leave to amend defendants' demurrer to amend his cause of action for false advertising in violation of section 17500. The trial court erred in sustaining the demurrer.

Under section 17500, it is unlawful for any person or entity "with intent directly or indirectly . . . to perform services . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate . . . in . . . any advertising device . . . or in any other manner or means whatever . . . any statement, concerning . . . those services . . . which is untrue or misleading . . . ." To plead properly a cause of action under section 17500, "[t]he complaint need only show that members of the public are likely to be deceived; allegations of actual deception, reasonable reliance, and damage are not required. [Citation.] It is not necessary to plead the exact language of each advertisement, to identify the persons making the misrepresentations and those to whom they were made, or to indicate the time and place of the deception. It is sufficient to describe a scheme to mislead customers, and allege that each misrepresentation to each customer conforms to that scheme." (5 Witkin, *supra*, Pleading, § 781, pp. 199-200, citing *Committee on Children's Television, Inc. v. General Foods Corp., supra,* 35 Cal.3d at pp. 211-214; *People v. Orange County Charitable Services* (1999) 73 Cal.App.4th 1054, 1076 ["The test of a cause of action is whether the advertising is such that "'members of the public are likely to be deceived." [Citations.] Allegations of actual deception, reasonable reliance, and damage are unnecessary.' [Citation.]"]; *People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes* (2006) 139 Cal.App.4th 1006, 1016 ["The 'likely to be deceived' standard requires a probability that 'a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.' [Citation.]"].)

Plaintiff's false advertising cause of action incorporated the allegations concerning defendant's alleged parking lot towing scheme and further alleged specifically that "defendants, and each of them, advertised safe and lawful paid parking for events to plaintiff and Class members when defendants, and each of them, knew or reasonably

12

should have known that plaintiff and Class members would be towed whether or not they had legally paid to park at those locations, so that defendants, and each of them, could profit thereby." These allegations contained sufficient facts that defendants falsely advertised parking as part of their parking lot towing scheme and that plaintiff and members of the public were likely to be deceived by defendants' false advertising. (5 Witkin, *supra*, Pleading, § 781, pp. 199-200; *Committee on Children's Television, Inc. v. General Foods Corp., supra,* 35 Cal.3d at pp. 211-214; *People v. Orange County Charitable Services, supra,* 73 Cal.App.4th at p. 1076; *People ex rel. Dept. of Motor Vehicles v. Cars 4 Causes, supra,* 139 Cal.App.4th at p. 1016.) Accordingly, the trial court erred in sustaining without leave to amend defendants' demurrer to plaintiff cause of action for false advertising.

## VI.  Elder Financial Abuse

Defendants demurred to plaintiff's cause of action for elder financial abuse on the ground that plaintiff failed to allege that he was at least 65 years old and thus had standing to bring such a cause of action. The trial court sustained the demurrer without leave to amend. On appeal, plaintiff contends that the trial court erred in sustaining the demurrer without leave to amend. He asserts that he could have amended his cause of action to correct the defect because he was born on April 3, 1945, and thus was 65 years old at the time his vehicle was towed from the 29th Street lot.

To maintain an action for elder financial abuse under Welfare and Institutions Code section 15610.30[7], the plaintiff must be at least 65 years old. (Welf. & Inst. Code,

---

[7]  Welfare and Institutions Code section 15610.30 provides, in relevant part:

"(a) 'Financial abuse' of an elder or dependent adult occurs when a person or entity does any of the following:
"(1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.
"(2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.

13

§ 15610.27 ["'Elder' means any person residing in this state, 65 years of age or older"].) Plaintiff's cause of action for elder financial abuse did not allege that plaintiff was at least 65 years old. Based on that defect, plaintiff's cause of action was deficient.[8] Because the defect in plaintiff's cause of action could have been corrected by amendment, the trial court erred in sustaining the demurrer without leave to amend. (*City of Dinuba v. County of Tulare, supra,* 41 Cal.4th at p. 865.) Plaintiff can make this showing in the first instance to the appellate court. (*Lee v. Los Angeles County Metropolitan Transportation Authority* (2003) 107 Cal.App.4th 848, 854.) This being a simple amendment, we determine that plaintiff should be allowed to amend to plead his age.

## VII.   CLRA

Plaintiff contends that he properly pleaded a cause of action for violation of the CLRA and the trial court erred in sustaining with leave to amend defendant's demurrer. We agree.

The CLRA is "'a nonexclusive statutory remedy for 'unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to

---

"[¶]-[¶]

"(b) A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult.

"(c) For purposes of this section, a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult."

[8]    The allegations in support of this cause of action appear to fit within the literal wording of the Elder Financial Abuse Statute. (Welf. & Ins. Code, § 15610.30.) We leave it to the trial court to decide this matter in connection with any amended complaint plaintiff may file and any demurrer thereto.

any consumer. . . .' [Citation.]'" [Citation.]" (*Wang v. Massey Chevrolet* (2002) 97 Cal.App.4th 856, 869.) The CLRA is to "be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." (Civ. Code, § 1760.) Under the CLRA,"'[p]erson' means an individual, partnership, corporation, limited liability company, association, or other group, however organized"; and "'[c]onsumer' means an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes." (Civ. Code, § 1761, subds. (c) & (d).)

In his cause of action for violation of the CLRA, plaintiff incorporated his allegations concerning defendants' parking lot towing scheme and alleged specifically that "[t]he policies, acts and practices of defendants, and each of them, as described above were intended to deceive plaintiff and the Class and have resulted (and will result) in monetary loss." Defendants' conduct, the cause of action alleged, violated various parts of Civil Code section 1770, including subdivision (a)(9)[9] which identifies "[a]dvertising . . . services with intent not to sell them as advertised" as an unfair method of competition or an unfair or deceptive act or practice under the CLRA. Accordingly, plaintiff properly pleaded a cause of action for violation of the CLRA based on defendants' advertisement that persons could park at the 29th Street lot with the intent not to allow parking as advertised in violation of Civil Code section 1770, subdivision (a)(9), and the trial court erred in sustaining with leave to amend defendants' demurrer to this cause of action.[10]

---

[9] Civil Code section 1770, subdivision (a)(9) provides, "(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful: [¶]-[¶] (9) Advertising goods or services with intent not to sell them as advertised."

[10] Because defendants' alleged violation of Civil Code section 1770, subdivision (a)(9) is a sufficient basis for plaintiff's CLRA cause of action, we need not address

## VIII. Ohayan

Ohayan demurred to all of plaintiff's causes of action on the ground that plaintiff failed to "sufficiently plead alter ego allegations" against her because he failed to plead facts that establish that the "individuality or separateness of [South Coast] has ceased to exist and that Ohayon [*sic*] is in fact the corporation. Furthermore, plaintiff has not alleged a single fact in the complaint that alter ego liability is necessary to avoid an inequitable result in this case."[11] Plaintiff contends that he properly pleaded Ohayan's liability.

"Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. [Citations.] A corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation. [Citation.] Under the alter ego doctrine, then, when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners. [Citations.] The alter ego doctrine prevents individuals or other corporations from misusing the corporate laws by the device of a sham corporate entity formed for the purpose of committing fraud or other misdeeds. [Citation.] [¶] In California, two conditions must be met before the alter ego doctrine will be invoked.

---

whether the other subdivisions on which plaintiff relied also are sufficient bases for plaintiff's cause of action.

[11] Although the trial court expressly did not sustain defendants' demurrer as to plaintiff's causes of action on this ground, we consider the issue because we will sustain defendant's demurrer if the demurrer was well taken on any ground pleaded, even if not relied upon by the trial court. (*Mendoza v. Town of Ross* (2005) 128 Cal.App.4th 625, 631 ["We affirm if any ground offered in support of the demurrer was well taken . . . . [Citations.] We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale. [Citation.]"].)

16

First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone. [Citations.]" (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538-539.)

Plaintiff alleged on information and belief that South Coast Towing Systems and South Coast were mere shells without capital, assets, stock, or stockholders. It further alleged that South Coast Towing Systems and South Coast were the alter egos of Ohayan and the Doe defendants who were their controlling shareholders, officers, directors, or partners. Plaintiff alleged, "There is, and at all relevant times was, a unity of interest and/or ownership between all of these defendants so that any individuality or separateness between them has ceased to exist in that TA [*sic*] is and was under their control and domination. Defendants [South Coast Towing Systems] and/or [South Coast] is/are, and at all relevant times was/were, completely controlled, dominated, managed and operated by defendants Ohayan and/or Does 1 through 25, inclusive, and each of them, so that defendants [South Coast Towing Systems] and/or [South Coast] was/were a mere shell(s), instrumentality/ies and/or conduit(s) through which each of these defendants conducted some or all of his/her/their/its business. Adherence to the fiction of the separate existence of defendants [South Coast Towing Systems] and/or [South Coast] as an entity or entities distinct from defendants Ohayan and/or Does 1 through 25, inclusive, or any of them, would permit an abuse of the corporate privilege and sanction fraud or promote injustice in that, among other things, it would enable each of these defendants to avoid liability and to defraud his, her or its creditors, the effect of which would be to render each defendant financially unable to respond to a monetary judgment awarded against each or any of them in this action." Plaintiff, in alleging alter ego, pleaded sufficiently that any individuality or separateness between South Coast and Ohayan had ceased to exist and that alter ego liability was necessary to avoid an inequitable result. (*Sonora Diamond Corp. v. Superior Court, supra,* 83 Cal.App.4th at pp. 538-539.)

17

## DISPOSITION

The judgment is reversed.  Plaintiff is awarded his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


MOSK, J.


We concur:


TURNER, P. J.


KRIEGLER, J.